# Richmond

## W. Rufus Sanford v. Maude L. Ware.

June 19, 1950.

Record No. 3590.

Present, Hudgins, C. J., and Gregory, Eggleston, Spratley, Buchanan and Miller, JJ.

The opinion states the case.

*R. O. Norris, Jr.,* and *Charles E. Stuart,* for the plaintiff in error.

*John E. Mayo* and *Dabney Overton,* for the defendant in error.

EGGLESTON, J., delivered the opinion of the court.

Maude L. Ware filed a notice of motion for judgment against W. Rufus Sanford to recover damages for the negligent manner in which the defendant had disinterred the body of the plaintiff's husband from its resting place in a cemetery and reinterred it in another cemetery, and for the indignities inflicted upon the remains during the removal and reinterment. Damages for pecuniary loss sustained and for mental anguish suffered were claimed. A demurrer challenging the right to recover damages for mental suffering was overruled and thereafter the defendant filed a plea of

"not guilty." Upon a trial by a jury there was a verdict in favor of the plaintiff in the sum of $1,000, upon which the trial court entered judgment, and to review that judgment the present writ of error has been awarded.

The plaintiff is a Negro and a retired school teacher, who at the time of the action was living in Philadelphia but had formerly lived in Westmoreland county, Virginia.

On July 13, 1947, the body of the plaintiff's husband, Charles Wendall Ware, was interred in Little Zion Baptist Church Cemetery in Westmoreland county. In May, 1948, she decided to remove the remains and reinter them in Grant's Hill Cemetery in the same county, and for this purpose she sought the services of the defendant, W. Rufus Sanford, a white man, who was engaged in the business of an undertaker in the town of Montross. After some negotiations Sanford agreed to remove the remains and the casket in which they were originally interred and reinter them in Grant's Hill Cemetery. He also agreed to remove the tombstone and reinstall it at the new grave. For these services the plaintiff agreed to pay him the sum of $39.

On July 10 Sanford telephoned the plaintiff that he was engaged in removing the body; that the casket was in good condition, but that the wooden case in which it had been placed had been so badly damaged that it was necessary that a new one be supplied. He stated that the cost of the new case would be $14, and the plaintiff readily agreed to pay this additional amount.

On the same day one of the plaintiff's daughters went to Grant's Hill Cemetery, found Sanford there, and was told by him that the reburial had been completed in a satisfactory manner. Shortly thereafter the plaintiff paid Sanford's bill of $53.

About a month later a rumor reached the plaintiff that her husband's body had not been removed, and in order to satisfy her mind she employed another undertaker to investigate the matter. Upon opening the old grave it was

discovered that both the casket and case and a part of the tombstone had been left in the grave.

Upon an examination of the new grave it was discovered that the excavation consisted of a trench less than thirty inches in depth and barely of sufficient width to accommodate the body. In it the body was found, without the benefit of a casket, case, or shroud, only a few inches below the surface of the ground. The record discloses that in that locality the usual depth of a grave is from four to four and one-half feet.

There was testimony on behalf of the plaintiff from a local undertaker that by the exercise of proper care the body, which was in a good state of preservation, together with the original casket and case, could have been removed from the first grave and reinterred in the second. It is true that the defendant testified to the contrary, but the verdict of the jury, of course, settled this issue in favor of the plaintiff.

At the trial the defendant conceded that he had not performed his contract properly and that both he and his employees were negligent in the manner in which the body had been reinterred. His story is that after the body had been taken from the first grave under his direction, it was placed in the new case and carried to Grant's Hill Cemetery. At the latter cemetery, after directing his employees to open the new grave, the defendant left the scene, expecting to return in time to supervise the reinterment. Upon his return he found that the grave had been dug and the body buried therein, but the wooden case in which the body was supposed to be enclosed had not been used. He inquired the reason for this and was informed by his employees that the ground was too hard for them to dig a grave of sufficient depth to accommodate the wooden case, and moreover, they said, the body was in such a bad state of decomposition that they were barely able in its presence to dig the shallow trench for its accommodation. While the defendant protested that the body had not been buried in a

proper manner, his employees, he said, refused to go ahead with the work.

Furthermore, the defendant said, he intended in the near future to return to the cemetery and have the body buried in a proper manner, but he never did so. On the next day he left for a business trip to Chicago, which required nearly a week, and upon his return therefrom went to a hospital at Richmond for an operation to correct a chronic trouble. By the time the defendant had been discharged from the hospital the plaintiff had discovered his dereliction of duty and had taken steps to have the remains of her husband placed in a casket and properly buried, at a cost of $135.

Over the objection of the defendant the lower court permitted the plaintiff to prove that in addition to the pecuniary loss sustained, she was greatly shocked and distressed and suffered mental pain and anguish because of the careless and negligent manner in which the remains of her husband had been handled and treated by the defendant and his employees. Over the like objection of the defendant, the court instructed the jury that such mental or emotional suffering was a proper element to be considered by them in assessing the plaintiff's damages.

The assignments of error raise but one question and that is whether in this type of case a plaintiff may recover, in addition to the pecuniary loss sustained, damages for mental anguish and suffering.

While the notice of motion alleges the making of the contract between the parties for the removal of the remains of the plaintiff's husband, and the breach thereof, it sounds in tort. It alleges that by reason of the contract of employment it was the defendant's "duty to use due care in the aforementioned disinterment and reinterment to see that" her "husband's remains were decently and properly handled and buried;" that nevertheless, the defendant "negligently failed to exercise such care, but, in a grossly negligent manner and in willful and wanton disregard" of her rights, "did perpetrate the grossest form of indignity" upon

her "husband's dead body;" that the defendant had fraudulently misrepresented to her that the remains had been properly buried, while in fact this had not been done; and that as "the proximate result" of the defendant's "negligence" and misconduct she had "been damaged to the extent of" the amount claimed.

Moreover, the defendant's plea of "not guilty," as well as the instructions tendered and refused, show that the parties and the court treated the case as a tort action.

Although there is no right of property in a commercial sense in the dead body of a human being, the right to bury and preserve the remains is recognized and protected as a quasi-property right. 25 C. J. S., Dead Bodies, section 2, pp. 1016, 1017; 15 Am. Jur., Dead Bodies, section 6, pp. 831, 832; *Goldman* v. *Mollen*, 168 Va. 345, 354, 191 S. E. 627, 631.

Consequently, an action *ex delicto* will lie against a wrongdoer for the unlawful invasion of a near-relative's rights with respect to a dead body, such as committing an act of indignity upon it, or for a breach of duty in respect to it. 25 C. J. S., Dead Bodies, section 8, p. 1025 *ff*; 15 Am. Jur., Dead Bodies, section 34, p. 852; Cooley on Torts, 4th Ed., Vol. 2, section 178, p. 49 *ff*; *Wright* v. *Beardsley*, 46 Wash. 16, 89 P. 172.

When we reach the question as to whether mental pain or suffering is a proper element of damages in such cases the courts are in hopeless conflict. Upon the principle, prevailing in some jurisdictions, that mental pain and suffering alone do not constitute a basis for the recovery of substantial damages, some courts deny a recovery for mental suffering, unaccompanied by pecuniary loss, where the wrongful act of the defendant amounts to mere negligence. Others take the opposite view. In a third class of cases a recovery is allowed for mental pain and suffering alone resulting from a wrongful act which is willful or wanton or amounts to gross negligence. See 15 Am. Jur., Dead Bodies,

section 35, pp. 853-5; 25 C. J. S., Dead Bodies, section 8-e, p. 1030.

In *Awtrey* v. *Norfolk, etc., R. Co.*, 121 Va. 284, 93 S. E. 570, L. R. A. 1918D, 279, we held that a mother was not entitled to damages for mental anguish resulting from the negligent failure of the railway company to notify her of her son's death and the mutilation of his body upon its right of way, because, we said, "there can be no recovery for mental anguish which is unaccompanied by actionable physical or pecuniary damage caused by the wrongful act of another." (121 Va., at page 289.)

That decision was based upon the earlier case of *Connelly* v. *Western Union Tel. Co.*, 100 Va. 51, 40 S. E. 618, 93 Am. St. Rep. 919, 56 L. R. A. 663, in which it was held that damages for mental suffering alone, as an independent cause of action, occasioned by the negligent failure to deliver a telegram notifying the plaintiff of the death of his father could not be maintained.

█ But it is universally held that where a personal tort, such as that with which we are here concerned, has been committed which will support an action to recover some damages, compensation for mental suffering may be recovered in addition thereto if such suffering is a natural and probable result of the act. See Sedgwick on Damages, 9th Ed., Vol. 1, sec. 43-i, pp. 62, 63; Cooley on Torts, 4th Ed., Vol. 1, sec. 49, p. 107; 25 C. J. S., Damages, sec. 63, pp. 549, 550.

We applied this principle in *Chesapeake, etc., Tel. Co.* v. *Carless*, 127 Va. 5, 102 S. E. 569, 23 A. L. R. 943. That was a tort action in which Miss Carless, a trained nurse, sought damages of the Chesapeake & Potomac Telephone Company for having wrongfully suspended her telephone service. The evidence showed that disrupting the service caused the plaintiff serious inconvenience and annoyance in her business and some pecuniary loss, although the exact amount was not shown. The plaintiff recovered a verdict and judgment for $600 which we sustained.

We pointed out that the case was not controlled by *Connelly* v. *Western Union Tel. Co.*, *supra*, in which there was no proof of pecuniary loss in addition to the plaintiff's mental suffering. In the course of the *Carless* opinion we quoted with approval the governing principle thus stated in Sedgwick on Damages, 9th Ed., Vol. 1, sec. 43-i, p. 62: "If a cause of action exists independently of the mental suffering, so that an action will lie at any rate, there can be no doubt of the right to compensation for any mental suffering which proximately follows." (127 Va., at page 12.)

The cases relied on by counsel for Sanford do not deal with this precise question. They are typical of the holdings which deny a right of recovery for mental anguish alone, or limit the right of recovery to a situation where the defendant's act is willful or wanton or amounts to gross negligence.

The principles applied in the *Carless Case* are controlling in the situation now before us. That the defendant was guilty of gross negligence and carelessness cannot be seriously questioned. Indeed, his behaviour borders on, if it does not amount to, willful misconduct. Although he knew that his employees had not given the body a decent burial, he concealed the fact from the plaintiff, accepted her money, and took no steps to correct the wrong which he had done her.

As a proximate result of the defendant's negligence the plaintiff was compelled to expend the sum of $135 in order that the body of her husband might be decently buried and that the indignities which the defendant and his servants had inflicted upon it might be corrected as far as possible. The plaintiff claimed other elements of pecuniary loss which we need not relate or discuss. Suffice it to say that it plainly appears that as the proximate result of the defendant's wrongful act the plaintiff suffered some pecuniary loss which, of course, gave her a cause of action.

As a further consequence of the wrongful acts of the

defendant and his servants the plaintiff was caused to suffer great mental pain and anguish. She was, she says, upset and mentally shocked to find that her husband's remains had been treated with such indignity and disrespect. That such mental suffering was the natural and probable consequence of the negligent acts is not questioned.

It is a matter of common knowledge that near relatives, irrespective of race, color, or creed, have the tenderest feelings and emotions for the remains of their dead. From the nature of his calling and experience the defendant was especially aware of this. He knew, or ought to have known, that the plaintiff, the widow of the dead man, would naturally and probably suffer mental anguish if he were neglectful of the contract which he had made with her, or inflicted indignities upon the remains of her husband.

We are of opinion, therefore, that the trial court was correct in holding and instructing the jury that in assessing the damages, if any, which the plaintiff was entitled to recover they should take into consideration both the "pecuniary loss" which she sustained and the "mental suffering" which she had undergone as the proximate result of the defendant's negligence.

Accordingly, the judgment complained of is

*Affirmed.*