# HUGH MCHENRY

### V.

# MARY E. ADAMS, ETC., ET AL.

Record No. 930957

September 16, 1994

Present: All the Justices

*Rodney Sager; Carolyn A. White* for the appellant.

*William Orr Smith* for appellees Mary E. Adams, t/a C. W. Edwards Funeral Home; Anthony S. Adams and Cedell Brooks, Jr.

*(William B. Kerkam, III; Bremner, Baber & Janus*, on brief for appellees Angelo S. Stevens and Julia Stevens, t/a Rappahannock Vault Company).

*(Clarence N. Jenkins, Jr.; Wilder & Gregory*, on brief for appellee Ambrose W. Bailey).

CHIEF JUSTICE CARRICO delivered the opinion of the Court.

This case involves a claim for damages allegedly resulting from the improper burial of the plaintiff's mother. The sole question for decision is whether the trial court erred in sustaining the defendants' pleas of the statute of limitations. Finding that the court did not err, we will affirm.

On August 9, 1990, the plaintiff, Hugh McHenry, filed a motion for judgment and, later, a second amended motion for judgment against the defendants, Mary E. Adams, trading as C. W. Edwards Funeral Home (Edwards), Angelo S. Stevens and Julia Stevens, trading as Rappahannock Vault Company (Rappahannock Vault), and Anthony S. Adams, Ambrose W. Bailey, and Cedell Brooks, Jr., employees of Edwards. Seeking compensatory damages for physical and mental injuries as well as punitive dam-

ages, McHenry alleged that the defendants were guilty of negligence, breach of warranty, misrepresentation, and violation of the Virginia Consumer Protection Act.

In response, the defendants filed pleas of the statute of limitations which, as indicated above, the trial court sustained. We awarded McHenry this appeal.

The evidence is derived from pretrial depositions whose use is not the subject of controversy on appeal. This evidence shows that McHenry's mother died on April 15, 1988. On April 17, McHenry made arrangements with Edwards for his mother's burial. On April 19, she was buried in a casket that was enclosed in a "Citation" vault supplied by Rappahannock Vault. Several weeks after the burial, Rappahannock Vault furnished McHenry with a "VAULT PURCHASE AGREEMENT" guaranteeing the Citation vault against "damage due to penetration . . . by water from outside the vault."

On July 15, 1988, McHenry visited his mother's grave and noticed two holes "about six inches in diameter" in the ground beside the grave. He saw flies coming from one of the holes. At that time, McHenry "thought something was wrong." He became "tense" and "jittery" and began "[h]aving trouble sleeping at night." He also became depressed from seeing flies around his mother's grave.

On July 18, 1988, McHenry complained to the local health department and on July 22 "via phone" to the Virginia Department of Health Professions. The Department's "Complaint Form," on which McHenry's grievance was recorded, is an exhibit in the record. It states that

> on a recent visit to the grave, [McHenry] found the grave to have sunken and flies to have gathered around the grave. [McHenry] had ordered a sealed . . . Vault, but believed that [Rappahannock Vault] did not provide the vault, provided a faulty or defective vault, or substituted a non-sealing vault.

Some time later, Angelo Stevens, one of the principals in Rappahannock Vault, visited the gravesite at the request of an Edwards employee. Stevens observed "[t]wo holes that had washed down on the side" of the grave. He "ran [his] hand down [one of the holes] to make sure the lid was on [the vault]." He filled the

holes with dirt and reported to McHenry that "there was nothing wrong."

Still "not satisfied," McHenry arranged to have his mother's body disinterred. The disinterment took place on March 20, 1990, and it revealed that the vault leaked and that the casket contained water. Contrary to what McHenry had been led to believe by Edwards, the vault was not waterproof, but was made from porous material. The body was reinterred in a waterproof vault.

McHenry's physical and mental problems "intensified after the disinterment." He began to suffer nightmares in which his mother was depicted as floating in her casket. He entered into a state of "clinical depression" and was required to seek professional psychological counselling for his problems. He filed his action for damages on August 9, 1990.

The trial court found that McHenry's injuries "are not to his person in the sense that he has sustained a direct personal injury," but, rather, the result of "an unlawful invasion of his right to afford his mother a proper burial, a right first recognized as such" in *Sanford v. Ware*, 191 Va. 43, 60 S.E.2d 10 (1950). Accordingly, the trial court ruled that the applicable limitation was the one-year period specified by Code § 8.01-248 for personal actions "for which no limitation is otherwise prescribed," rather than the two-year period fixed by Code § 8.01-243(A) for actions for personal injuries and fraud. The court ruled further, however, that McHenry's cause of action accrued on July 15, 1988, the date he observed flies coming from the gravesite, and that because the action was not filed until August 9, 1990, more than two years later, the action was time-barred under either the one-year or the two-year limitation.

McHenry contends the trial court erred in ruling that his cause of action accrued on July 15, 1988, and in holding that the one-year limitation applied. He argues that his case is governed by the two-year limitation for personal injury actions contained in Code § 8.01-243(A). But, he says, whether the one-year or the two-year limitation is applied, the result is the same because his cause of action did not accrue until March 20, 1990, when his mother's body was disinterred and he discovered the presence of water in her casket. He filed his action for damages on August 9, 1990, less than five months after this discovery, McHenry points out, and, hence, the filing was clearly within either limitation.

Continuing, McHenry maintains that even if the trial court was correct in ruling the cause of action accrued on July 15, 1988, it erred in not evaluating "the tolling effect of fraud." McHenry notes that under Code § 8.01-249(1), an action for fraud accrues "when such fraud . . . is discovered or by the exercise of due diligence reasonably should have been discovered."

McHenry contends that he properly alleged fraud in his second amended motion for judgment and that the evidence showed the defendants had "engaged in an ongoing campaign" of concealment to prevent discovery of the cause of holes and flies at the gravesite. He admits that he saw the holes and the flies on July 15, 1988, but he says he "still had no reason to discover the fraud [that was] perpetrated upon him until March 20, 1990," when his mother's body was disinterred. Hence, McHenry asserts, the defendants' fraud tolled the statute of limitations until March 20, 1990, the first date that, in the exercise of due diligence, he could have discovered the fraud and ascertained the true condition of the vault.

In any event, McHenry says, there was a conflict in the evidence on "the factual question of [when] the onset of damage [occurred]" as well as on the question concerning the tolling effect of the defendants' fraud. Hence, McHenry concludes, the trial court should have submitted these factual questions to the jury for decision, rather than deciding them as a matter of law.

■ For purposes of this appeal, we will assume, without deciding, that McHenry is correct in his argument that the two-year personal injury statute of limitations applies. It does not follow, however, that he is entitled to reversal of the trial court's holding that his case was time-barred. In our opinion, McHenry's further argument that his cause of action did not accrue until March 20, 1990, when his mother's body was disinterred, is rendered meritless by his own testimony with respect to his visit to his mother's grave on July 15, 1988, and the action he took as a result of what he observed. That testimony establishes, as a matter of law, the accrual of his cause of action, at the latest, on July 22, 1988, or more than two years before he filed his initial motion for judgment on August 9, 1990.

■ McHenry testified that when he saw the holes in the ground and the flies at the gravesite on July 15, 1988, he "thought there was something wrong," and his "emotional problems began." He became "tense" and "jittery" and began "[h]aving trouble sleep-

ing at night." He was already "[s]omewhat" depressed over his mother's death, but "it probably made it a lot worse seeing flies around [his] mother's grave." Because of what he had seen at the gravesite, he complained first to the local health department and then, on July 22, 1988, to the Virginia Department of Health Professions. We think it was on this date, at the latest, that McHenry's cause of action accrued.

■ There is no doubt that McHenry's emotional problems became more severe when his mother's body was disinterred and he discovered the vault and casket contained water. But a cause of action accrues when the plaintiff is injured, *Locke v. Johns-Manville Corp.*, 221 Va. 951, 959, 275 S.E.2d 900, 905 (1981), and the injury need only be slight; it is immaterial that more substantial damage may occur at a later date, *Caudill v. Wise Rambler*, 210 Va. 11, 14-15, 168 S.E.2d 257, 260 (1969).[1]

McHenry's own testimony also renders meritless his claim that the statute of limitations was tolled by the defendants' "ongoing campaign" of concealment to prevent discovery of the defective vault containing the casket of McHenry's mother.[2] McHenry's testimony shows clearly that he was not deceived by the campaign. The only evidence McHenry cites to support his "campaign" theory consists of Angelo Stevens's testimony that he inspected the vault, made sure its lid was intact, filled the holes with dirt, and reported to McHenry that he found nothing wrong. Yet, McHenry testified that, when he received the report, he was "not satisfied," and he decided he was going to "see about having [the

---

[1] McHenry says he "proffered medical evidence that his legally recognizable damage accrued on March 20, 1990," when his mother's body was disinterred. He also says the trial court's failure "to give proper weight" to this evidence was reversible error. However, the "evidence" was in the form of an affidavit executed by Gary J. Gaulin who, the affidavit states, is "licensed as a professional counselor," and the affidavit was not proffered to the trial court but merely filed by McHenry, without leave of court, along with a memorandum, after the issue of the statute of limitations had been submitted for decision. Aside from the fact that the affidavit may not qualify as "evidence," its statement that McHenry's "current emotional distress is directly related to his mother's disinterment in March, 1990" does not detract from the proposition that the *onset* of McHenry's injury occurred as a result of what he observed on his July 15, 1988 visit to his mother's grave. And it is the onset of injury that triggers the running of the appropriate statute of limitations.

[2] As noted by the trial court in its letter opinion, McHenry argued below that Code § 8.01-249(1) extends the statute of limitations in actions based upon fraud. But, as the trial court also noted, "[s]ection 8.01-249 provides for the time of accrual, not extension of such time."

vault] disinterred." And, of course, McHenry had already discovered "there was something wrong" before Stevens ever made his inspection and report.[3]

A plaintiff's case can rise no higher than his own testimony. *Massie v. Firmstone*, 134 Va. 450, 462, 114 S.E. 652, 655-56 (1922). McHenry's testimony shows, as a matter of law, that his claim for damages is time-barred. He is bound by his testimony and, for this reason and the other grounds assigned above, we will affirm the judgment of the trial court.

*Affirmed.*

---

[3] McHenry argues that "[e]ven if the fraud cannot be established to toll the statute of limitations in this case until March 20, 1990 . . ., the facts alleged in McHenry's Motion for Judgment support the application of the doctrine of equitable estoppel to entirely bar the plea of the statute of limitations." However, estoppel is not the subject of, or even mentioned in, any assignment of error. Accordingly, we will not consider McHenry's argument. Rule 5:17(c).