Shelly SIVER, et. al., Plaintiffs,

v.

**ROCKINGHAM MEMORIAL HOSPITAL, et. al.,**
Defendants,

Nos. 98–0063–H, 98–0064–H and 98–0065–H.

United States District Court, W.D. Virginia, Harrisonburg Division.

April 1, 1999.

John Douglas McKay, McKay Law Offices, Charlottesville, VA, for plaintiffs.

Glen M. Hodge, Wharton, Aldhizer & Weaver, Harrisonburg, VA, for defendants.

## MEMORANDUM OPINION

CRIGLER, United States Magistrate Judge.

This action is before the court under authority of 28 U.S.C. 636(c)(2) on the defendants' February 5, 1999 motion to dismiss for lack of subject matter jurisdiction, for failure to state a claim upon which relief can be granted, and for lack of any real party plaintiff in interest. Fed. R.Civ.P. 12(b)(1), 12(b)(6) and 17(a). For the reasons that follow, the defendants' motions to dismiss will be DENIED.[1]

1. On March 24, 1999, the parties presented oral argument in support of and in opposition to the motions. At the conclusion of the hearing, the court announced its decision

*Background*

On April 20, 1998, David Siver, the deceased son and brother of the plaintiffs, died at Rockingham Memorial Hospital (RMH) as the result of multiple blood clots in his lungs. Siver's body allegedly was moved by defendants Sandra Chandler (Chandler) and Cathy Peterson (Peterson) in the course of their employment to the RMH morgue. Further, it is alleged that defendants Chandler and Peterson left Siver's body in an unrefrigerated area of the morgue despite the availability of refrigerated cadaver storage facilities. For the next two days, according to the complaint, the body remained in an unrefrigerated state. During this time, defendants Yolanda Kennedy (Kennedy), Peggy Coffey (Coffey), Chandler and Peterson, as RMH employees allegedly acting within the scope of their employment, had the direct responsibility for the care of Siver's body. Their conduct is allegedly attributable to RMH under the doctrine of *respondeat superior*.

On April 22, 1998, defendants released Siver's body to funeral home representatives and family members. Because it was not refrigerated, the body was in stage three decomposition thus preventing the funeral home personnel from restoring it to a normal appearance. The next day, plaintiffs viewed the decomposing body, and as an alleged result they suffered severe shock and emotional distress.

Plaintiffs filed separate diversity actions under 28 U.S.C. § 1332 which now have been consolidated. By way of an amended complaint, they now assert three claims. Count I alleges negligent handling of a corpse. Count II alleges intentional infliction of emotional distress, and Count III alleges negligent infliction of emotional distress.

from the bench with the express understanding that it would render a written opinion supplanting the oral bench decision.

*Discussion*

■ Standing to bring an action is a prerequisite to federal jurisdiction, for without it there is no case or controversy between the parties. Defendants may challenge subject matter jurisdiction at any time, even on appeal, and they certainly may do so under Fed.R.Civ.P. 12(b)(1). Moore's Federal Practice § 101.30[1] (3d. ed.1998). The burden of establishing standing rests on the party asserting federal jurisdiction, but for purposes of ruling on the motions to dismiss, all allegations are deemed true and are viewed in a light most favorable to the non-moving party. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S.Ct. 2130, 2136–37, 119 L.Ed.2d 351 (1992).[2]

Defendants assert in their memoranda, and confirmed at the hearing, that only "next of kin" have a right to possess, preserve, bury, or otherwise dispose of a body, and that only such persons who have exercised such rights may assert claims related to improper disposition of a corpse, including the claims for emotional distress. They urge the court to define "next of kin" in a fashion after the laws of descent and distribution in this Commonwealth, giving priority first to a surviving spouse, and if none, then to surviving adult children, and if none, then to surviving parents, and if none, then to the surviving siblings of the deceased. Here, it is agreed that David Siver was divorced at the time of his death, and that he had surviving children who have instituted related claims in the state courts. Plaintiffs are the decedent's surviving parent and siblings who, according to defendants' view of the law, have no rights to the corpse and, therefore, no standing to bring these claims.

■ Defendants accept that the common law of Virginia recognizes both a 'quasi-property' right to preserve and bury the remains of a human body and a right to bring an action in tort for the "unlawful invasion of a near-relative's rights with respect to a dead body. . . ." *Sanford v. Ware*, 191 Va. 43, 48, 60 S.E.2d 10, 12 (1950). By the same token, they acknowledge that neither *Sanford* nor any subsequent decisional authority fixes the class of "near relatives" entitled to enforce the quasi-property right or the class entitled to assert claims related to the disposition of a corpse.[3] Instead, they point to Virginia's laws of descent and distribution and to cases from other jurisdictions which have applied similar principles to claims arising out of the mishandling of corpses. *See Walser v. Resthaven Memorial Gardens, Inc.*, 98 Md.App. 371, 633 A.2d 466, 473 (1993); *Whitehair v. Highland Memory Gardens*, 174 W.Va. 458, 327 S.E.2d 438 (1985); *Stegall v. Doctors Hospital*, 171 F.2d 352 (C.A.D.C.1948); *Simpkins v. Lumbermens Mut. Casualty Co.* 200 S.C. 228, 20 S.E.2d 733, 736–37 (1942).

Defendants also acknowledge that the Virginia General Assembly has enacted specific statutes regulating the disposition corpses by institutions as well as regulating the receipt and burial of bodies by funeral directors. Va.Code.Ann. §§ 32.1–288 (1998) and 54.1–2800 *et. seq.* Their reading of these statutory provision would

---

**2.** The parties have stipulated that at the time of Siver's death he was divorced, leaving no surviving spouse, and that he did leave surviving adult children who have filed parallel actions in the appropriate state court. The matters are outside the pleadings but are relevant to the court's determination of the issues presented. For simplicity's sake, and because the parties are not to be prejudiced by the court's decision today from addressing these issues on summary judgment after discovery is completed, the court will deem those facts to have been alleged in the complaint.

**3.** Defendants contend that "near relative" is synonymous with "next of kin" which the Virginia Supreme Court has defined in the context of wills and trusts as "nearest in blood." *See Elmore v. Virginia National Bank*, 232 Va. 310, 350 S.E.2d 603 (1986); *Boyd v. Fanelli*, 199 Va. 357, 361–62, 99 S.E.2d 619, 623 (1957) (stating that next of kin refers to a class of which all members would be in the same degree of kinship to deceased); *Kello v. Kello's Executors*, 127 Va. 368, 377, 103 S.E. 633 (1920).

confirm their belief that the court must resort to Virginia's laws of descent and distribution in defining "next of kin".

Plaintiffs, on the other hand, argue that the language used by the *Sanford* court was not accidental, and that the term "near relatives" intentionally fashions a class of persons with rights to a body that is broader than the class fashioned by the term "next of kin." While plaintiffs did not squarely address in their memoranda how the cited statutory regulations impact that interpretation of *Sanford,* they orally argued that the statutory regulations reinforce their view that the class of persons with rights to a decedent's body is not constrained by the law of descent and distribution.

The General Assembly has provided that once a body is ready for internment or cremation either because an investigation concerning the cause of death is complete or not necessary, the "person or institution having initial custody of the dead body shall make good faith efforts ... to identify the next of kin of the decedent, and the dead body may be claimed by the *relatives* or *friends* of the deceased person for disposition." VA.CODE ANN. § 32.1–288 (1998) (emphasis added). Under these provisions, a class of individuals with rights to claim a body is fashioned in a way that not only includes "next of kin" but also encompasses "relatives" and "friends." It takes very little to discern that at least one significant purpose served by establishing this broad class of individuals entitled to claim a corpse is to meet the need of ensuring the orderly and expeditious disposition of a body without resort to the difficult and often confusing task of sequentially determining who within a blood line is entitled to claim the body that requires immediate attention.[4]

Concurrently, the Code of Virginia prohibits a funeral home from accepting a corpse from an institution, such as RMH, without "having first inquired about the desires of the next of kin and the persons liable for the funeral expenses of the decedent." This is so, apparently because "[t]he authority and directions of **any** next of kin shall govern the disposal of the body." VA.CODE ANN. § 54.1–2807(B) (1998) (emphasis added). Under this chapter of the Code, "next of kin" is statutorily defined in the following manner:

"Next of kin" means **any** of the following persons, **regardless of the relationship to the decedent:** any person designated to make arrangements for the disposition of the decedent's remains upon his death pursuant to § 54.1–28–25, the legal spouse, child over eighteen years of age, custodial parent, noncustodial parent, siblings over eighteen years of age, guardian of minor child, guardian of minor siblings, maternal grandparents, paternal grandparents, maternal siblings over eighteen years of age and paternal siblings over eighteen years of age, or any other relative in the descending order of blood relationship.

VA.CODE ANN. § 54.1–2800 (1998) (emphasis added).

Here again, the General Assembly has not fashioned a structure equivalent to the sequential order of priority established for determining distribution of an estate. *Cf.* VA.CODE ANN. § 64.1–1 (1998) (intestate succession). Rather, the instant definition of "next of kin" opens the class concurrently to *any* individual listed regardless of degree of relationship to the decedent so that there may be an orderly and expeditious internment by the funeral director. That other states establish a sequential hierarchy of relatives analogous to those for distribution of an estate has no relevance here because, in this court's view, the General Assembly of Virginia clearly has elected to fashion a class of individuals with rights to a body that are

---

4. In contrast, the General Assembly took a different approach in establishing rights in persons to donate a decedent's anatomical parts. VA CODE ANN. § 32.1–290.1 (1998).

While this statute begins with the phrase "[A]ny member," it grants authority to those members "in the order of priority listed."

**612**

both broad and coequal. Any person within that class has the right to possess, preserve, or bury the dead body, and, in turn, those who have exercised those rights then would have standing to assert claims relating to the mishandling or mutilation of that body, including emotional distress allegedly suffered as a result thereof. In other words, standing is derivative of the exercised right to possess, preserve, and bury a corpse. *Accord, Allinger v. Kell,* 102 Mich.App. 798, 302 N.W.2d 576, 579 (1981) *rev'd on other grounds* 411 Mich. 1053, 309 N.W.2d 547 (1981).

■ Here, each plaintiff falls within the class of "next of kin" articulated by the statutes relating to disposition and burial of a corpse, and, therefore, they had a right to possess, preserve, and bury David Siver's body. To the extent any and each of them exercised that right, which the complaint so indicates, they may maintain the claims related to the disposition of David Siver's body that are asserted in their consolidated complaints, including the claims for infliction of emotional distress. By so holding, this court makes no factual adjudication as to whether each actually exercised those rights and the extent to which the exercise thereof is causally related to any claimed loss. At this stage of the proceedings, plaintiffs have alleged that they possess the right, exercised the right and suffered such loss. Therefore, they have standing to bring the instant claims.[5]

Accordingly, an Order will enter DENYING defendants' motions to dismiss.

The Clerk of Court hereby is directed to send a certified copy of this Memorandum Opinion to all counsel of record.

---

**5.** The court need not determine whether the plaintiffs would have standing to assert their claims for infliction of emotional distress apart from the exercise of their right to claim David Siver's body, because they are alleged to have exercised the right to possession of his corpse. The defendants shall not be prejudiced, however, from raising the question should discovery demonstrate facts inconsistent with these particular allegations.