Paul MAZUR, Paul Woodson Mazur,
Deborah A. Mazur Silva, and Walter
E. Mazur, Plaintiffs,

v.

Lewis Victor WOODSON, Bucktrout
of Williamsburg, and Erin
Warner, Defendants.

No. 4:01CV115.

United States District Court,
E.D. Virginia,
Newport News Division.

March 20, 2002.

Paul Mazur, Margate, NJ, pro se.

Paul Woodson Mazur, Margate, NJ, pro se.

Deborah A. Mazur Silva, Margate, NJ, pro se.

Walter E. Mazur, Seattle, WA, pro se.

Paul G. Watson, IV, Esquire, McGuire Woods, LLP, Richmond, VA, for Defendants Bucktrout & Warner.

Alvin P. Anderson, Esquire, Kaufman & Canoles, P.C., Williamsburg, VA, Christopher R. Papile, Esquire, Kaufman & Canoles, P.C., Newport News, VA, for Defendant Woodson.

### *MEMORANDUM OPINION AND FINAL ORDER*

REBECCA BEACH SMITH, District Judge.

This matter comes before the court on the motions to dismiss filed by defendant Bucktrout Funeral Home of Williamsburg, Inc. ("Bucktrout"), defendant Erin Warner, and defendant Lewis Victor Woodson ("Woodson"), pursuant to Federal Rule of Civil Procedure 12(b)(6). Defendant Woodson also filed a motion for sanctions, pursuant to Federal Rule of Civil Procedure 11(c). For the reasons set forth below, the motions to dismiss are GRANTED. The motion for sanctions is GRANTED, in part, and DENIED, in part.

## I. Factual and Procedural History

Paul and Betty Mazur married in Virginia in 1958 and lived within the state until 1965. They subsequently moved to New Jersey. In May of 1994, Paul Mazur brought his wife back to Virginia to stay with her Aunt, Ethel W. Johnson; at that time Betty Mazur was suffering from the onset of Alzheimer's disease. In August of 1994, without the knowledge of Paul Mazur, Betty Mazur was moved from Ms. Johnson's residence to the residence of Betty Mazur's brother, Victor Lewis Woodson. In September of that year, Woodson filed a petition in the Circuit Court of James City County to have Betty Mazur declared incompetent and to have him appointed as guardian over her person and property. On October 6, 1994, Judge Person, a state circuit court judge at that time, entered an order granting Woodson's petition. On October 30, 1995, several relatives of Betty Mazur, including Paul Mazur, filed suit in the United States District Court for the District of New Jersey against the Virginia Circuit Court, raising numerous state law and constitutional challenges to Judge Person's ruling. The suit was subsequently transferred to the Western District of Virginia, and then to the Eastern District of Virginia, because the defendant circuit court is located in this district.

By order dated June 24, 1996, Judge Clarke of this court dismissed the plaintiff's federal and state law claims against the Virginia Circuit Court. *See Mazur v. Woodson,* 932 F.Supp. 144, 148 (E.D.Va. 1996). On January 24, 2001, plaintiffs Paul Mazur, Paul W. Mazur, Victoria M. Mazur, Deborah A. Mazur Silva, and Walter E. Mazur filed a *pro se* 42 U.S.C. § 1983 petition, alleging that the 1994 guardianship order entered by Judge Person violated their constitutional rights. The suit named as defendants Woodson, the Circuit Court for the City of Williamsburg, Judge William L. Person, Jr., and the State of Virginia. By order dated July 27, 2001, this court granted the defendants' motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). *Mazur v. Woodson,* No. 4:01cv3 (E.D.Va. July 27, 2001). This court's order was affirmed by the Fourth Circuit Court of Appeals on November 15, 2001. *Mazur v. Woodson,* No. 01–2017, 21 Fed.Appx. 233, 2001 WL 1435539 (4th Cir. Nov. 15, 2001).

On July 1, 2001, while the § 1983 suit was still pending, Betty Mazur died. Woodson contracted to have Bucktrout perform the burial of Betty Mazur's body. Erin Warner, an employee of Bucktrout, handled the burial service on July 5, 2001. On July 15, 2001, the plaintiffs in the instant suit filed a petition in Virginia Circuit Court in an effort to have Betty Mazur disinterred so that they could re-bury her remains in New Jersey. By order dated August 10, 2001, the state court approved the order pursuant to a consent decree signed by Woodson. The plaintiffs subsequently disinterred and re-buried Betty Mazur's corpse. On November 7, 2001, plaintiffs filed a complaint in this court, based on diversity of jurisdiction under 28 U.S.C. § 1332, against Woodson, Bucktrout, and Erin Warner, alleging intentional and negligent mishandling of a corpse under Virginia common law. They claim that they received no notice of the original burial. Due to the advanced decomposition of Betty Mazur's remains when she was disinterred, the plaintiffs claimed that they were unable to hold a proper funeral service for Betty Mazur. As a result they claim they suffered damages, including damages for infliction of emotional distress, which exceeded $75,000.[1]

---

1. The court has serious doubts that the plaintiffs' damages in this suit could conceivably

On December 13, 2001, defendant Bucktrout filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). On December 14, 2001, Woodson also filed a motion to dismiss. On December 31, 2001, plaintiffs filed a response to the two motions to dismiss. On that same day, Woodson filed a motion for sanctions against the plaintiffs, pursuant to Federal Rule of Civil Procedure 11(c). On January 7, 2002, Erin Warner filed a motion to dismiss, and Woodson filed a reply to the plaintiffs' response to his motion to dismiss. On January 11, 2002, plaintiffs filed a response to Woodson's motion for sanctions. On January 14, 2002, plaintiffs filed a response to Erin Warner's motion to dismiss. On January 14, 2002, Woodson filed a reply to the plaintiffs' response to the motion for sanctions. On January 16, 2002, Bucktrout and Erin Warner filed a joint reply to plaintiffs' responses to their motions to dismiss. The various motions are now ripe for review.

## II. Discussion

Plaintiffs argue that Virginia common law provides a hierarchy of relatives who have quasi-property rights over the corpse of a deceased family member. They claim that as Betty Mazur's spouse and children, their quasi-property rights to Betty Mazur's corpse are superior to those of her brother, defendant Woodson.[2] Based on

this reasoning, they contend that Woodson and Bucktrout had a duty to inform them prior to burying Betty Mazur's corpse, and that failure to do so violated their quasi-property rights in her corpse. In short, plaintiffs claim that Woodson and Bucktrout had a duty to determine their wishes prior to burying Betty Mazur's corpse.

### Defendants Bucktrout and Erin Warner

 Contrary to the plaintiffs' assertion, Bucktrout's responsibilities are established by Title 54.1 of the Virginia Code, not by the state's common law. Directly applicable to this case is § 54.1–2807(B), which was enacted in 1988 and provides:

> Funeral service establishments shall not accept a dead human body from ... any public or private facility ... without having first inquired about the desires of the next of kin and the persons liable for the funeral expenses of the decedent. The authority and directions of *any* next of kin govern the disposal of the body.

*Id.* (emphasis added). Betty Mazur passed away at the Riverside Convalescent Home in Newport News, Virginia, which is a private facility. Bucktrout had a statutory duty to inquire about the desires of Betty Mazur's next of kin before accepting her body from the Convalescent Home. *Id.* Bucktrout also had a duty to obtain "authority and directions of any next of kin" prior to disposing of Betty Mazur's body.

exceed $75,000. Because the defendants do not challenge the subject matter jurisdiction of the court, the court will address the plaintiffs' claims on the merits.

**2.** Woodson asks the court to take judicial notice that he is Betty Mazur's brother. There is no issue of fact as to whether Woodson is Betty Mazur's brother. At least two prior opinions from this court have recognized that Woodson is Betty Mazur's brother. *Mazur v. Woodson*, No. 4:01cv3 (E.D.Va. July 27, 2001); *Mazur v. Woodson*, 932 F.Supp. 144, 148 (E.D.Va.1996). The Virginia state courts have recognized this fact. (Order Appointing

Guardian (Def. Woodson's Mot. Dismiss Ex. 1, ¶ 2.)) Plaintiffs have also conceded as much in this case. (Resp. to Def. Woodson & Bucktrout's Mot. Dismiss at 3 & 13 n. 7 (suggesting Woodson may suffer from the same "mental illness" as his sister Betty Mazur.)) The only arguable assertion to the contrary occurs in one of the plaintiffs' responsive briefs: "Here, the defendant brother-in-law, Woodson, withheld the corpse from the surviving spouse and children of the deceased." (Resp. to Def. Erin Warner's Mot. Dismiss at 5.) Taken in context, this reference is to Woodson as being Paul Mazur's brother-in-law, which he is.

*Id.* Provided that Bucktrout determined the wishes of Betty Mazur's next of kin prior to doing so, it satisfied its statutory duties.

Section 54.1–2800 provides the definition of "next of kin" for the purposes of § 54.1–2807. Included among a deceased's next of kin are "siblings over eighteen years of age." *Va. Code Ann.* § 54.1–2800 (1998).[3] Woodson, Betty Mazur's brother, falls within the ambit of this definition. Because Bucktrout and its employee, Erin Warner, disposed of Betty Mazur's corpse in accordance with the "authority and direction[s]" of Woodson, they complied with the statute.

There is sound policy in having a broadly defined category of "next of kin," rather than the narrow hierarchy urged upon the court by the plaintiffs. This policy was succinctly articulated in *Siver v. Rockingham Mem. Hosp.*, 48 F.Supp.2d 608 (W.D.Va.1999):

> [T]he instant definition of "next of kin" opens the class concurrently to *any* individual listed regardless of degree of relationship to the decedent so that there may be an orderly and expeditious internment by the funeral director. That other states establish a sequential hierarchy of relatives analogous to those for distribution of an estate has no relevance here because, in this court's view, the General Assembly of Virginia clearly has elected to fashion a class of individuals with rights to a body that are both broad and coequal. Any person within that class has the right to possess, preserve, or bury the dead body ....

*Id.* at 611–12. Because of the clear mandate by the Virginia legislature, plaintiffs' theories, which rely upon pre-statutory common law, must fail.

Plaintiffs make an alternative argument. They contend that, even assuming the broad language of the Virginia Code applies to this case, § 54.1–2807(B) gave Bucktrout *authority to dispose* of Betty Mazur's corpse, *not the authority to bury* her corpse. To support this argument, plaintiffs cite the definition of "practice of funeral services," contained within § 54.1–2800: "'Practice of funeral services' means engaging in the care and disposition of the human dead, the preparation of the human dead for the funeral service, burial or cremation, the making of arrangements for the funeral service ...." Because the definition contains the terms "burial" and "disposition," plaintiffs argue the terms must have different definitions; if they have identical definitions, there would be redundancy in the statute. (Resp. Def.'s Woodson and Bucktrout's Mot. Dismiss at 9.) Based on this reasoning, plaintiffs argue that "disposal," as used in § 54.1–2807(B), gave Woodson the authority "only to make decisions concerning the administration of the body such as payment for funeral services or receive the body to transfer it to relatives or another funeral home if he didn't like the funeral services [at Bucktrout]." (*Id.* at 11.) If Woodson did not have the authority to give directions regarding Betty Mazur's burial, then Bucktrout and Erin Warner lacked the authority to bury her body.

---

**3.** "Next of kin" is defined broadly for the purposes of this chapter:

"Next of kin" means any of the following persons, regardless of the relationship to the decedent: any person designated to make arrangements for the disposition of the decedent's remains upon his death pursuant to § 54.1–2825, the legal spouse, child over eighteen years of age, custodial parent, noncustodial parent, siblings over eighteen years of age, guardian of minor child, guardian of minor siblings, maternal grandparents, paternal grandparents, maternal siblings over eighteen years of age and paternal siblings over eighteen years of age, or any other relative in the descending order of blood relationship.

■ This argument is disingenuous. A statute must be given its plain meaning. *See, e.g., Sentara Beach General Hosp. v. LeBeau,* 188 F.Supp.2d 623, 625 (E.D.Va. 2002) (citing *Perrin v. United States,* 444 U.S. 37, 42, 100 S.Ct. 311, 62 L.Ed.2d 199 (1979)). Giving "disposal of the body," as used in Virginia Code § 54.1–2807(B), its plain meaning would necessarily include burial. That disposition includes burial is supported by the plain meaning of the word "bury." *Webster's Ninth New Collegiate Dictionary* (1985), provides the following definition of the word "bury": "to dispose of by depositing as if in the earth; *esp:* to inter with funeral services." *Id.* at 189.[4] In short, disposition indicates a finality that is lacking in plaintiffs' interpretation of the word. *See, e.g., Webster's Ninth New Collegiate Dictionary* 365 (1985) (defining "dispose" as "to deal with conclusively").

Nothing in the statutory definition of "practice of funeral services" in § 54.1–2800 is contrary to this conclusion, and, in fact, the definition supports this conclusion. The definition itself indicates that the "practice of funeral services" includes "preparation of the human dead for the funeral service, burial, or cremation," i.e., preparation for disposition, and also includes "disposition of the human dead," i.e., the subsequent burial or cremation. *Va.Code Ann.* § 54.1–2800. This definition, then, is consistent with the conclusion that "disposal of the body," as used in § 54.1–2807(B), includes burial of the body. Thus, the two code sections, given their plain meaning and read together, lead only to the logical conclusion that disposition encompasses burial of the body. Accordingly, the motions to dismiss filed by de-fendants Bucktrout and Erin Warner are GRANTED.

### Defendant Woodson

To support their cause of action against Woodson, plaintiffs heavily rely upon the holding in *Sanford v. Ware,* 191 Va. 43, 60 S.E.2d 10 (1950). In that case, the Virginia Supreme Court noted that "the right to bury and preserve the remains is recognized and protected as a quasi-property right." 191 Va. at 48, 60 S.E.2d 10. The court went on to hold that "an action *ex delicto* will lie against a wrongdoer for the wrongful invasion of a near-relative's rights with respect to a dead body ... or for a breach of duty in respect to it." *Id.; see also Awtrey v. Norfolk & W. Ry. Co.,* 121 Va. 284, 284, 93 S.E. 570, 571 (1917) ("It is well settled that the near relatives of a deceased person have a legal right to the solace of burying the body, and that any interference with that right, whether by mutilation of the body after death, or by withholding it from the relatives, is actionable.").

These cases establish the right of near relatives to have a proper burial of their deceased family member. Should a third party interfere with that right by withholding the body or mishandling the body, the family would have a cause of action against that party, including claims for infliction of emotional distress. *See Siver,* 48 F.Supp.2d at 608 (denying defendants' 12(b)(6) motion in a suit against hospital and its employees for allegedly failing to refrigerate decedent's body); *Sanford,* 191 Va. at 43, 60 S.E.2d 10 (widow had cause of action against undertaker who mishandled her husband's corpse); *Awtrey,* 93 S.E. at 571 (finding for the defendant railroad because the evidence indicated that

---

4. In § 54.1–2808.1 (Disposition of cremains), the Virginia Code indicates that disposition also includes the disposing of cremains: "A funeral director may dispose of the cremains of an individual by interment, entombment, inurnment, or by scattering of the cremains ...."

after plaintiff's son was killed on defendant's premises, defendant did not "mutilate his body or withhold it from [his mother's] possession").

■ As recognized in *Siver*, the enactment of Virginia Code § 54.1–2807 indicates the legislature's intent to create a "broad and coequal" class of individuals who have rights to the deceased's body. 48 F.Supp.2d at 612. Any member of this class would have a cause of action *against a third party* who interfered with that right:

> [E]ach plaintiff falls within the class of "next of kin" articulated by the statutes relating to disposition and burial of a corpse, and, therefore, they had a right to possess, preserve, and bury [decedent's] body. To the extent any and each of them exercised that right, which the complaint so indicates, they may maintain the claims related to the disposition of [decedent's] body that are asserted in their consolidated complaints, including the claims for infliction of emotional distress.

*Id.* Because each member of the deceased's "next of kin," as defined by the Virginia Code, has equal rights to "possess, preserve, and bury" a decedent's body, there can be no cause of action among members of that class for withholding a corpse from other members of the class. Woodson, Betty Mazur's brother, is a member of Betty Mazur's "next of kin,"[5] and has a quasi-property interest in Betty Mazur's body that is equal to that of the plaintiffs. Therefore, he is not subject to suit from other members of that class for withholding the body from them.

Plaintiffs also rely on a second argument to support their claim against Woodson, namely that a widow's (or widower's) wishes with regard to the disposition of their deceased spouse should prevail over the wishes of other family members. They cite *Goldman v. Mollen*, 168 Va. 345, 191 S.E. 627 (1937), in which the court dealt with a suit in equity, brought by the decedent's children. The plaintiffs in *Goldman* sought to have their father's body disinterred and moved next to the burial site of the decedent's wife (the children's mother). In acknowledging its powers to do so, the court noted in dicta that the wishes of a widow (and by analogy to this case, a widower) should prevail in determining a "decedent's place of burial." *Id.* at 354, 191 S.E. 627. The court ultimately denied the plaintiffs' petition because decedent was buried where he wanted to be buried and where his wife had wanted him to be buried. *See id.* at 355, 191 S.E. 627.[6]

■ While the court recognizes potential tension between *Siver* and the dicta in *Goldman*, *Goldman* simply does not provide support for the plaintiffs' suit at bar.

---

5. *See supra* notes 2 and 3.

6. It is unclear whether the enactment of Virginia Code § 54.1–2807(B) has abrogated the dicta in *Goldman* which indicated that a widow's wishes should prevail over other family members with regard to disposition of her deceased spouse. Addressing a petition in equity, the Virginia Supreme Court in *Grisso v. Nolen*, 262 Va. 688, 554 S.E.2d 91 (2001), cited *Goldman* and recognized the quasi-property right of a surviving spouse to determine the disposition of a deceased spouse's remains, but held that the right did not "survive the entry of a divorce decree." 262 Va. at 695, 554 S.E.2d 91. However, the court in *Grisso* did not indicate whether this quasi-property right was superior to those of other family members. *See id.* There is no need to resolve this issue in the case at bar because all equitable rights Paul Mazur may have had to disinter Betty Mazur's body have been resolved in state court. *See supra* at 3; *infra* at 13. Moreover, the *Grisso* case was not cited by plaintiffs and dealt with a different issue, i.e., the survival after divorce of an ex-spouse's quasi-property rights in a deceased former-spouse's body, than the issue before the court in the case at bar.

*Goldman* was a suit brought in a court of equity, and the language relied upon by the plaintiffs is dicta. In deciding whether to exercise its equitable powers to allow disinterment of a decedent's body, a court may have to consider the wishes of the decedent's widow above those of the other members of the decedent's "next of kin." [7] In this case, Woodson has already signed a consent decree allowing the plaintiffs to disinter Betty Mazur's body and move her remains to New Jersey. Any equitable rights Paul Mazur may have had in this matter have been resolved by the state court and are not before this federal court. Accordingly, defendant Woodson's motion to dismiss is GRANTED.[8]

### Woodson's Motion for Sanctions

Woodson's Motion for Sanctions, pursuant to Federal Rule of Civil Procedure 11(c), requests that the court impose two forms of sanctions: first, he requests that the court award him attorney's fees and costs; second, he requests that this court impose a pre-filing injunction against plaintiffs that would bar them from a federal suit against him without leave of the court. (Def.'s Brief Support Mot. Sanctions.) For the reasons set forth below, this motion is GRANTED, in part, and DENIED, in part.

When presenting a motion or a pleading to the court, a party is certifying that "to the best of the person's knowledge, infor-

mation, and belief, formed after an inquiry reasonable under the circumstances," -

> (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law . . . .

*Fed.R.Civ.P.* 11(b)(1), (2). If the court determines that a party has failed to meet the requirements of Rule 11(b), it may impose sanctions "after notice and a reasonable opportunity to respond." *Fed R. Civ. P.* 11(c). Plaintiffs have had both notice and a reasonable opportunity to respond: Woodson filed a motion for sanctions on December 13, 2001, and plaintiffs responded to the motion on January 11, 2002.[9]

To the court's knowledge, this is the third suit filed by the plaintiffs in this federal court, all of them involving an ongoing dispute with regards to Betty Mazur, and each of them naming Woodson as a defendant. *See Mazur v. Woodson,* No. 4:01cv3 (E.D.Va. July 27, 2001) (dismissing § 1983 challenge to Judge Person's 1994 guardianship order; Woodson was one of the named defendants); *Mazur v. Woodson,* 932 F.Supp. 144, 148 (E.D.Va.1996) (addressing claim against Virginia Circuit

---

7. *See supra* note 6. *But see Goldman,* 168 Va. at 355, 191 S.E. 627 ("Internments once made should not be disturbed except for good cause.").

8. As an alternative argument in his motion to dismiss, Woodson contends that the court order appointing him as Betty Mazur's guardian also made him her conservator for purposes of Virginia Code § 37.1–137.5(C). (Def. Woodson's Mot. Dismiss at 8.). He argues that his position as conservator gave him the authority to bury Betty Mazur's corpse. (*Id.*)

Plaintiffs vigorously contest this issue. (Resp. Def. Woodson and Bucktrout Mot. Dismiss at 12–15.) Given the court's holding, there is no need to address this argument.

9. The plaintiffs' response frivolously asks this court to *sua sponte* impose Rule 11 sanctions against Woodson's attorney for violating the Code of Professional Conduct. (Resp. to Woodson's Rule 11 Motion.) Plaintiffs base this request on the content of Woodson's motion for sanctions. (*Id.* at 7–9.) This suggestion is absurd and warrants no discussion.

Court for a suit in which Woodson was named as a defendant).[10] The court is unable to determine how many suits the plaintiffs have initiated in Virginia state courts, but on at least two occasions sanctions were imposed against some of the plaintiffs in the instant suit by a Virginia state court. On June 3, 1997, the Circuit Court of the City of Williamsburg ordered that Woodson be awarded sanctions to be paid by Paul Mazur and Paul Woodson Mazur, joint and severally, in the amount of $175. (Def. Woodson's Mot. Dismiss Ex. B–8.) On December 9, 1999, the same court entered an order of pre-filing injunction against Paul Mazur, Paul Woodson Mazur, Deborah A. Mazur Silva, and Victoria M. Mazur, requiring them to obtain leave of the court before filing any suit in a Virginia state court. (Def. Woodson's Mot. Dismiss Ex. B–13.) There is clearly a pattern of the plaintiffs abusing the state and federal court systems, and in the process harassing Mr. Woodson and costing him unnecessary litigation expenses.

 In the instant case, the court finds that the plaintiffs have violated subsections (b)(1) and (b)(2) of Rule 11. Their claims against Woodson are frivolous, and are not warranted under existing law or by a non-frivolous argument for a change in the law. Furthermore, the repeated pattern of litigation in which Woodson is named a defendant convinces the court that the plaintiffs' claims are not brought for a proper purpose. The plaintiffs received the equitable relief they sought in state court when Woodson voluntarily signed a consent decree allowing the plaintiffs to move Betty

Mazur's body to New Jersey. The plaintiffs have nothing to gain in this matter other than protracted litigation with Woodson and Bucktrout.

Accordingly, the court GRANTS Woodson's motion for sanctions in the form of a pre-filing injunction against plaintiffs. As the court believes this to be a sufficient sanction to deter future litigation, defendant's request for monetary sanctions is DENIED. However, plaintiffs are put on notice that further litigation in this court regarding the issue in the instant suit and the two other dismissed federal cases, aside from an appeal of this Memorandum Opinion and Final Order, will likely subject them to severe monetary sanctions from this court. *See Artco Corp. v. Lynnhaven Dry Storage Marina, Inc.,* 141 F.3d 1434, 1448 (11th Cir.1998) ("An improper purpose may be shown by excessive persistence in pursuing a claim or defense in the face of repeated adverse rulings.").

### III. Conclusion

For the reasons set forth above, defendant Bucktrout's motion to dismiss is GRANTED. Defendant Erin Warner's motion to dismiss is GRANTED. Defendant Woodson's motion to dismiss is GRANTED, and his motion for sanctions is GRANTED, in part, and DENIED, in part.

It is ORDERED that plaintiffs Paul Mazur, Paul Woodson Mazur, Deborah A. Mazur Silva, and Walter E. Mazur, jointly and severally, shall each be subject to a pre-filing injunction in the Eastern District of

10. Paul Mazur, Paul Woodson Mazur, Victoria M. Mazur, Deborah A. Mazur Silva, and Walter E. Silva were plaintiffs in the § 1983 suit filed in this court. *Mazur v. Woodson,* No. 4:01cv3 (E.D.Va. July 27, 2001). Paul Mazur, Paul Woodson Mazur, Victoria Mazur, and Walter E. Mazur were plaintiffs in the federal suit transferred to this court in 1996. *Mazur v. Woodson,* 932 F.Supp. 144, 148

(E.D.Va.1996). Thus, this is the third federal suit initiated in this court by Paul Mazur, Paul Woodson Mazur, and Walter E. Mazur against defendant Woodson; Deborah A. Mazur Silva was a plaintiff in two of those suits. Each of the federal suits involved Betty Mazur, and each of the suits was dismissed pursuant to Rule 12(b)(6).

Virginia. Should the plaintiffs wish to initiate any civil litigation in this court, they must comply with the following requirements: (1) plaintiffs must submit an "Application for Leave to File Suit in Federal Court," along with a copy of this order imposing the pre-filing injunction, to the Clerk of the Court; and (2) accompanying the "Application for Leave to File Suit in Federal Court," each plaintiff must attach a separate and notarized declaration or affidavit certifying that the matters raised in the suit have never before been raised or disposed of on the merits in either state or federal court. Should the plaintiffs file an "Application for Leave to File Suit in Federal Court," the Clerk is DIRECTED to submit the application to the court for consideration. Plaintiffs are cautioned that a violation of the pre-filing order may constitute contempt of court and subject the plaintiffs to civil and criminal penalties.

Plaintiffs may appeal this Memorandum Opinion and Final Order by forwarding a written notice of appeal to the Clerk of the United States District Court, United States Post Office & Courthouse Building, Post Office Box 494, 101 25th Street, Room 201, Newport News, Virginia 23607. The written notice must be received within thirty (30) days of this Order. *See Fed. R.App. P.* 4(a).

The Clerk is DIRECTED to send a copy of this Memorandum Opinion and Final Order to plaintiffs and counsel for defendants.

**IT IS SO ORDERED.**