Present: All the Justices

SANDRA NOLEN GRISSO

                                              OPINION BY
v.  Record No. 002927        JUSTICE LAWRENCE L. KOONTZ, JR.
                                           November 2, 2001
DILLARD LAWSON NOLEN


              FROM THE CIRCUIT COURT OF FRANKLIN COUNTY
                    William N. Alexander, II, Judge


     In this appeal, we consider whether a decedent's former

spouse had standing to petition the circuit court to have the

decedent's body disinterred and reburied in accord with what he

contended was the decedent's expressed wish regarding her final

resting place.

                              BACKGROUND

     Dillard Lawson Nolen and Lorraine Chitwood Nolen were

married in 1955.  The couple had one child, Sandra Nolen Grisso.

Dillard Nolen and Lorraine Nolen were divorced in 1993, but

continued to cohabit intermittently for the next six years until

Lorraine's death on August 4, 1999.

     Lorraine Nolen died intestate and left no written

instructions concerning the disposition of her body.  Grisso, as

her mother's next of kin and sole heir, had her mother's body

interred at Sandy Ridge Baptist Church in Franklin County.

     On January 7, 2000, Dillard Nolen filed a petition in the

Circuit Court of Franklin County, styled In Re: Lorraine

Chitwood Nolen, seeking an order to have Lorraine Nolen's body disinterred and reburied in one of two adjoining burial plots at Franklin Memorial Park in Franklin County. In the petition, Dillard Nolen alleged that Lorraine Nolen had "at all times indicated her desire to be buried in Franklin Memorial Park," and for that reason in 1998 he had purchased the two burial plots and a headstone engraved with his name and that of his former spouse. Dillard Nolen also alleged that he had purchased a pre-paid funeral service contract for Lorraine Nolen in 1993 prior to the couple's divorce. He further alleged that Grisso had been estranged from both her parents "for a long period of time." Grisso was made a party to the proceeding.

On March 16, 2000, Grisso filed a demurrer to the petition. Grisso contended that Dillard Nolen lacked standing to petition for the disinterment and reburial of Lorraine Nolen's body because, as a result of the couple having divorced, he was a legal stranger to Lorraine Nolen at the time of her death. Grisso conceded that her parents were cohabiting at the time of her mother's death, but contended that this did not confer upon her father the necessary standing to bring the petition for disinterment because Virginia does not recognize common law marriage. Grisso further contended that because Dillard Nolen had failed to obtain a written statement from Lorraine Nolen authorizing him to arrange for the disposition of her remains

2

upon her death, in accordance with Code § 54.1-2825, he could not seek through equity what he had failed to accomplish at law.[1]

In an opinion letter dated June 27, 2000, the chancellor ruled that although Dillard Nolen "is legally a stranger to Lorraine [Nolen], in fact he is not." The chancellor reasoned that the couple's long marriage and continued intermittent cohabitation following their divorce created a sufficient relationship to provide Dillard Nolen with standing to assert in the petition Lorraine Nolen's alleged expressed wish with regard to the disposition of her body. Upon reaching this conclusion, the chancellor then relied on Goldman v. Mollen, 168 Va. 345, 356, 191 S.E. 627, 632 (1937), for the proposition that it is the duty of the court to see to it that the decedent's expressed wish is given effect and, accordingly, overruled the demurrer. The chancellor's ruling was memorialized in an order dated July 24, 2000. That order gave leave for Grisso to file an answer to the petition within fifteen days.

---

[1]Grisso also filed a motion seeking sanctions against Dillard Nolen, alleging that he had filed the petition for disinterment in order to "get even" with her for obtaining a judgment against him to recover her mother's personal property. The chancellor's denial of the motion for sanctions is not at issue in this appeal.

3

Grisso filed a motion for reconsideration of the chancellor's ruling, noting that Goldman involved a dispute between the surviving next of kin of the decedent and the trustees of the cemetery where the decedent's remains were interred and, thus, the equity authority of the court had been properly invoked by persons with standing to bring the action to disinter those remains.  In the present case, by contrast, Grisso contended that the equity authority of the court should not be invoked based upon the petition of a legal stranger regardless of the factual relationship between that legal stranger and the decedent.  The chancellor took no action on the motion for reconsideration.

On August 2, 2000, Grisso filed an answer in which she denied that she and her mother had been estranged.  She further denied that her mother's expressed wish had been to be buried in Franklin Memorial Park and that the purchase of the burial plots and the pre-paid funeral services had been done to accomplish her mother's wish with regard to her place of burial.

On August 30, 2000, the chancellor held an ore tenus hearing on the petition.  Because this appeal is limited to the question of standing, we need not recount in detail the evidence on the merits of the petition developed at that hearing.  It will suffice to say that the record shows that the evidence was in conflict regarding whether Lorraine Nolen had expressed a

4

wish to be buried at Franklin Memorial Park.  There was evidence that following the couple's divorce and a subsequent violent confrontation between her husband and daughter, Lorraine Nolen had expressed a vehement desire not to be buried next to her husband, but she did not expressly state where she would prefer to be buried.  However, there was evidence that, during one period when the couple had reconciled, Lorraine Nolen had accompanied her former husband to Franklin Memorial Park when he purchased the burial plots and headstone.  There was also evidence that she later told several relatives and friends that she would be buried in Franklin Memorial Park next to her former husband.

Although Dillard Nolen had attempted to have his former wife "make somebody power of attorney" because Grisso was "liable to bury [her] anywhere," Lorraine Nolen declined to make such an election.  There was no dispute that the relationship between Dillard Nolen and Grisso was strained beyond the point of foreseeable reconciliation.

The chancellor resolved the conflict in the evidence and ruled that Lorraine Nolen's wish had been to be buried at Franklin Memorial Park next to her former husband.  By final order entered on September 10, 2000, the chancellor ordered that Dillard Nolen be permitted to have the body of Lorraine Nolen

"disinterred from Sandy Ridge Baptist Church and reinterred at Franklin Memorial Park."  We awarded Grisso this appeal.

DISCUSSION

As noted above, the issue raised in this appeal is limited to whether the chancellor erred in ruling that Dillard Nolen had standing to bring the petition seeking the disinterment and reburial of his former wife's body.  In general terms, "[t]he concept of standing concerns itself with the characteristics of the person or entity who files suit.  The point of standing is to ensure that a person who asserts a position has a substantial legal right to do so and that his rights will be affected by the disposition of the case.  In asking whether a person has standing, we ask, in essence, whether he has a sufficient interest in the subject matter of the case so that the parties will be actual adversaries and the issues will be fully and faithfully developed."  Cupp v. Board of Supervisors, 227 Va. 580, 589, 318 S.E.2d 407, 411 (1984) (internal citation omitted); see also Goldman v. Landsidle, 262 Va. 364, 371, 552 S.E.2d 67, 71 (2001).  These general terms regarding standing develop a more precise meaning and resulting application within the context of the factual circumstances and the legal proceeding involved in a specific case.

In the present case, it is not disputed that Lorraine Nolen made no testamentary provision regarding her desired final

6

resting place and did not "make arrangements for [her] burial or the disposition of [her] remains" in accordance with Code § 54.1-2825.  Under such circumstances, there also can be no dispute that upon her death, the proper determination of the place of her burial rested with her personal representative, her surviving spouse, or her next of kin.  Goldman, 168 Va. at 354, 191 S.E. at 631.  Thus, Grisso, as her mother's next of kin, was vested with the authority to determine the place of her mother's burial.[2]

By contrast, it is apparent that Dillard Nolen had no authority to arrange for the disposition of his former wife's body upon her death.  He was not authorized to make such arrangements by a designation made pursuant to Code § 54.1-2825, and he was not a person entitled to preferential appointment as the personal representative of Lorraine Nolen's estate under Code § 64.1-118.  Dillard Nolen was not Lorraine Nolen's "surviving spouse" as contemplated in Goldman, nor was he among Lorraine Nolen's "next of kin" as that term is defined with reference to who may make such arrangements because he was not

---

[2]Although the record is not clear on this point, it would appear that Grisso also qualified as the personal representative of her mother's estate.  Certainly, as next of kin and sole heir, she would have been the preferred person to so qualify. Code § 64.1-118.

7

the "legal spouse" of the decedent at the time of her death. See Code § 54.1-2800.

For these reasons, beyond question Lorraine Nolen's body was properly buried at Sandy Ridge Baptist Church, notwithstanding the subsequent revelation that her wish may have been to have her body buried at Franklin Memorial Park. This is particularly true in light of the fact that no challenge to the selection of the place of burial at Sandy Ridge Baptist Church was raised prior to the burial there, and no assertion is made that Grisso knowingly selected that place of burial against her mother's wish. It is in this factual context that we consider the issue of Dillard Nolen's standing to petition for disinterment and reburial of his ex-wife's body. Our focus is on whether he had a sufficient legal interest in Lorraine Nolen's wish regarding her final resting place so as to permit the court to invoke its equity authority to grant his petition.

Placing great reliance on the statement in Goldman that the chancellor had a duty to determine and give effect to the wish of the decedent with respect to the her place of burial, Dillard Nolen contends that he had standing because the suit was not adversarial in nature, but was brought "in rem" in order to permit the court to determine and give effect to Lorraine Nolen's wish regarding her final resting place. In effect, Dillard Nolen contends that the suit was not brought by him as

an adversarial party, but merely filed by him in his capacity as an interested person with evidence on the issue to be decided by the court.  We cannot agree with this novel premise regarding standing to invoke the authority of the court in equity to consider such a weighty and sensitive matter as whether to allow the disinterment of a body from a proper grave.

There can be no question of the authority of the court in equity to authorize the disinterment of a body for reburial in another place.  See, e.g., Grinnan v. Fredericksburg Lodge, 118 Va. 588, 592, 88 S.E. 79, 80 (1916).  Among other reasons, this authority is necessary in order to give effect to the principle, based upon a long-standing societal belief in the sanctity of giving effect to a decedent's wishes, that "the expressed wish of one, as to his final resting place, shall, so far as it is possible, be carried out."  Goldman, 168 Va. at 356, 191 S.E. at 632 (citation omitted).

However, that authority must be tempered by the principle, based upon an equally long-standing societal belief in the sanctity of graves, that "[i]nterments once made should not be disturbed except for good cause."  Id. at 355, 191 S.E at 631. Indeed, even where the party seeking disinterment was also the party responsible for selecting the initial gravesite, courts will not allow a violation of the final place of interment

9

without good cause.  See, e.g., Dougherty v. Mercantile-Safe
Deposit and Trust Company, 387 A.2d 244, 246-47 (Md. 1978).

Contrary to the chancellor's opinion, the circumstances of
the couple's thirty-eight year marriage and continued periods of
cohabitation following their divorce are insufficient to confer
upon Dillard Nolen any cognizable interest or legal standing
with respect to matters concerning his former wife.  See, e.g.,
Gloth v. Gloth, 154 Va. 511, 535, 153 S.E. 879, 886 (1930)
(following divorce "the marriage bond is completely severed").
One of the principal effects of a decree of divorce is to sever
the property interests of the two parties including the
extinguishing of all contingent property rights of one spouse to
the property of the other.  Code § 20-111.  Similarly, to the
extent that the authority to determine the disposition of a
decedent's remains is a quasi-property right of a surviving
spouse, Goldman, 168 Va. at 354, 191 S.E. at 631, that right
would not survive the entry of a divorce decree.  Cf. Vaughan v.
Vaughan, 200 N.E. 912, 913-14 (Mass. 1936) (holding that wife
had standing to seek disinterment where death of husband
occurred prior to entry of decree of divorce).

In short, under the specific facts of this case, Dillard
Nolen was a legal stranger to Lorraine Nolen as the result of a
divorce decree.  As such, and notwithstanding what evidence he
might have regarding Lorraine Nolen's wish as to the final

resting place of her body, he had no cognizable interest in the place of her burial and, thus, no standing to seek the disinterment of her body for reburial.  Accordingly, we hold that the chancellor erred in overruling the demurrer to the petition filed by Grisso, a person with legal standing to challenge the requested disinterment and reburial.

CONCLUSION

For these reasons, we will reverse the judgment of the chancellor and enter final judgment dismissing the petition for disinterment and reburial.

Reversed and final judgment.

11