Present:  Keenan,[1] Koontz, Lemons, Goodwyn, and Millette, JJ.,
          and Carrico and Lacy, S.JJ.

KATHRYN SHILLING
                                    OPINION BY SENIOR JUSTICE
v.   Record Number 090906               ELIZABETH B. LACY
                                         APRIL 15, 2010
BRIAN C. BAKER, ET AL.

              FROM THE CIRCUIT COURT OF ROCKINGHAM COUNTY
                          James V. Lane, Judge

                              FACTS

     The dispositive issue in this appeal is whether a plot of

land referred to as the "Baker Cemetery" constitutes a valid

cemetery under a Rockingham County zoning ordinance.

     Oliver Edwin Baker and Alice Crew Baker, the grandparents

of Kathryn Shilling and Brian Baker, owned a tract of land in

Rockingham County that included a scenic hilltop overlook.

When Oliver died in 1949, his ashes were scattered on the

hilltop.  The family erected a memorial plaque at the site and

later surrounded it with a 10-foot by 2-foot, chain-rope fence.

In the 1980s and 1990s, the family scattered the ashes of

Shilling's grandmother, father, and uncle and placed memorial

plaques at the same site.

     In 1991, Baker acquired by deed of gift approximately 67

acres of the Baker property including the site on which the

family ashes were scattered and memorial plaques placed.  After

_____

     [1] Justice Keenan participated in the hearing and decision
of this case prior to her retirement from the Court on March
12, 2010.

assuming ownership of the land, Baker did not interfere with Shilling and other family members visiting and maintaining the site. Nor did he object in 1999 when Shilling buried an urn containing her mother's ashes and placed a memorial plaque at the site. He also allowed Shilling to erect a 40-foot by 40-foot, wrought-iron ornamental fence in 2006, which encompassed an area outside the chain-rope fence where the urn was buried. The outer fence holds a sign that reads: "Baker Cemetery."

In November 2007, Baker contracted to sell the 67-acre parcel to David R. Kelly. The contract was conditioned on Baker relocating the "Baker Cemetery," which Baker planned to move 500 feet "down the hill." Shilling filed a complaint in the circuit court of Rockingham County asking the court to enjoin Baker from selling the land and from disturbing any part of the cemetery or removing any remains. Shilling also asked the court to declare the plot of land to be a cemetery and grant her and her relatives an easement to access the area.[2]

Baker filed an answer to the complaint and a counterclaim. Relying on a letter from the Rockingham County Zoning Administrator, Baker denied that the "Baker Cemetery" was a lawful cemetery established before the enactment of the

---

[2] The complaint named Baker, Kelly, and Lisa S. Simmons, the joint owner of the land one had to cross to access the "Baker Cemetery." The defendants will be collectively referred to as "Baker."

relevant Rockingham County zoning ordinance and asserted that the burial of the urn in 1999 was unlawful because it was done without a special use permit as required for the operation of a cemetery.[3]

Shilling, in her answer to the counterclaim, claimed that Baker was barred from denying the existence of a cemetery under the doctrines of estoppel and laches. Shilling also asked the Zoning Administrator to reconsider her decision, arguing that the burial of the urn containing her mother's ashes in 1999 was the continuation of a pre-existing, non-conforming use of the land as a cemetery because the cemetery use was established in 1949, before the enactment in 1984 of the zoning ordinance requiring a special use permit for a family cemetery. The Zoning Administrator agreed and reversed her opinion in April 2008, adopting Shilling's position with regard to a grandfathered family cemetery. Baker appealed the Zoning Administrator's decision to the Rockingham County Board of Zoning Appeals (BZA).

Before the BZA rendered any decision on the legality of the "Baker Cemetery," the trial court proceeded with Shilling's original suit. Following an ore tenus hearing, the court indicated that it would issue its ruling after the parties

---

[3] Rockingham County Code § 17-27(a) requires an owner of land within a general agricultural district (A-2) to obtain a special use permit before using the land for a cemetery.

submitted briefs on whether the land at issue met the legal definition of a cemetery.

On June 3, 2008, the BZA issued its decision in Baker's appeal, stating that a memorial garden or cemetery had been created before the enactment of the ordinance requiring a special use permit, but the boundary was limited to the 10-foot by 2-foot area encompassed by the chain-rope fence. The BZA also held that the burial of the urn beyond that area without a special use permit violated the zoning ordinance. Both Baker and Shilling filed petitions for certiorari from the BZA's decision. Baker also filed a demurrer to Shilling's petition asserting that the trial court should dismiss the petition because Shilling did not name the BZA, a necessary party, as a defendant.

Upon receipt of the petitions for certiorari, the trial court consolidated all three cases for argument on December 8, 2008. In an opinion letter applying to all the cases, the trial court concluded that the BZA erroneously applied principles of law in determining that the area within the chain-rope fence was a cemetery because "[n]o human remains were buried, entombed, or inurned within [the] area prior to the enactment of the ordinance." According to the trial court, the scattering of remains in 1949 failed to create a cemetery under Code § 54.1-2310, which required the land to be "used or

4

intended to be used for the interment of human remains."  The court thus found that a "cemetery cannot be established . . . without the burial of a dead body."  The smaller enclosure, therefore, did not qualify as a prior non-conforming use.  By final orders entered February 5, 2009, the trial court affirmed in part and reversed in part the decision of the BZA, overruled Baker's demurrer to Shilling's petition for certiorari, and dismissed Shilling's bill of complaint with prejudice.  We awarded Shilling an appeal.

## DISCUSSION

Although Shilling appealed the trial court's judgments in both her action for injunctive relief and her petition for certiorari from the decision of the BZA, her appeal presents a single dispositive issue: whether the property referred to as the "Baker Cemetery" was a legal cemetery under the zoning ordinance of Rockingham County.  The issue is a legal one, which we review de novo under the standard applicable to the trial court's judgments in Shilling's original action and her appeal from the decision of the BZA.  Code § 15.2-2314; Hale v. Board of Zoning Appeals, 277 Va. 250, 268, 673 S.E.2d 170, 179 (2009); Parfitt v. Parfitt, 277 Va. 333, 342, 672 S.E.2d 827, 830 (2009).

Shilling presents a number of arguments to support her contention that the trial court erred in concluding that the

5

"Baker Cemetery" had not been established as a cemetery prior to the enactment of the zoning ordinance requiring special use permits for cemeteries. She first argues that the trial court erred in failing to give deferential consideration to the wishes of her deceased relatives to be buried in the "Baker Cemetery." Citing Grisso v. Nolen, 262 Va. 688, 695, 554 S.E.2d 91, 95 (2001), Shilling contends that a court should carry out the expressed wishes of a decedent with respect to their "final resting place . . . so far as it is possible." Shilling also suggests that "[i]nterments . . . should not be disturbed except for good cause." Goldman v. Mollen, 168 Va. 345, 355, 191 S.E.2d 627, 631 (1937). According to Shilling, the trial court erred by placing a burden on her to prove the existence of a cemetery instead of requiring the defendants to overcome the "expressed wish[es]" of her deceased relatives.

Shilling's reliance on Grisso and Goldman is misplaced. In Grisso, the issue was "limited to whether [the plaintiff] had standing to bring the petition seeking the disinterment and reburial of his former wife's body." 262 Va. at 693, 554 S.E.2d at 94. Similarly, the plaintiffs in Goldman sought to disinter and rebury their father at a different location. 168 Va. at 347, 191 S.E.2d at 628. Thus, these cases dealt with a familial dispute regarding the location of burial and not, as in this case, whether certain land qualified as a legal

6

cemetery. Contrary to Shilling's contentions, neither case established a standard of review or a presumption that the desires of the deceased should trump applicable law. Indeed, the passage Shilling invokes from Grisso includes a qualifier: i.e., that the wishes of the deceased should be carried out "so far as it is possible." 262 Va. at 695, 554 S.E.2d at 95 (emphasis added). The question in this case is whether the actions of Shilling and her family established a legal cemetery. The trial court was correct to address that question without transforming the desires of Shilling's deceased relatives into an overriding presumption.

Shilling next argues that the trial court erred in relying on the definition of a cemetery in Rockingham County Code § 17-6. The trial court found that this provision, which states that a cemetery is "[l]and used for the burial of the dead," requires an actual burial of a dead body. Because nothing was buried in the "Baker Cemetery" prior to the enactment in 1984 of the County ordinances defining cemetery and requiring a special use permit to use land as a cemetery, the trial court held that there was no cemetery. According to Shilling, the zoning code's definition of "cemetery" is inapposite because the act creating the cemetery in this case occurred when the first ashes were scattered in 1949, before the adoption of the ordinance in 1984. In her view, the court thus should have

7

used the elements applied by the common law in 1949 for establishing a cemetery. Those elements, Shilling maintains, are reflected in the definitions of cemetery currently contained in the Code of Virginia and do not include an actual burial.

In identifying the elements necessary to create a cemetery at common law, Shilling turns to an Oklahoma case, Heiligman v. Chambers, 338 P.2d 144 (Okla. 1959), for the proposition that a family cemetery could be created by appropriation by the land owner for that use, interments of family members on the property, some setting off of the land, and erection of markers designating those persons whose remains were present. Shilling maintains that "burial" of remains was not inherent in the concept of a cemetery under the common law. However, the cemetery at issue in Heiligman contained three bodies, all of which were buried: "[two] in a concrete sepulchre above ground and [one] in a grave." Id. at 147. Thus whether the property at issue in Heiligman would have qualified as a family cemetery without these burials is unknown and the case cannot stand for such a proposition. Shilling offers no other support for her contention that burial was not an element of a cemetery under the common law, and we find none.

Shilling also maintains that current definitions of "cemetery" in the Code of Virginia do not require burial.[4] First Shilling points to the definition of cemetery found in Code § 54.1-2310: "[A]ny land or structure used or intended to be used for the interment of human remains." Continuing, Shilling notes that "interment," also defined in Code § 54.1-2310, means "all forms of final disposal of human remains." Shilling argues that the scattering of ashes is a "final disposal of human remains," and thus qualifies as an "interment" under the statute. Shilling concludes that because the deceased relatives clearly intended the "Baker Cemetery" to be used for interment, the scattering of ashes established a cemetery under Code § 54.1-2310. Furthermore, Shilling suggests that the scattering of ashes is one way of "bur[ying] the dead" under Rockingham County Code § 17-6.

Shilling's interpretation of Code § 54.1-2310 and her reliance exclusively on the definitions in that statute are also misplaced. There are a number of Virginia statutes addressing cemeteries and interment, a review of which reveals that some form of actual burial is required to create a cemetery. Code § 54.1-2310 defines interment as "all forms of final disposal of human remains including, but not limited to,

_____

[4] The parties recognize that no statute existing in 1949 contained a definition of cemetery.

9

earth burial, mausoleum entombment and niche or columbarium inurnment."  By its terms, the statute does not exhaust the list of potential "forms of final disposal."  All the examples listed, however, share a common feature: a permanent resting place either underground or in a confined space or container. See Andrews v. Ring, 266 Va. 311, 319, 585 S.E.2d 780, 784 (2003) (under the maxim of noscitur a sociis, "[w]hen general words and specific words are grouped together, the general words . . . will be construed to embrace only objects similar in nature to those objects identified by the specific words"). The mere scattering of human remains above ground is not a "final disposal" comparable to a burial underground or in a mausoleum, niche or columbarium.  Indeed, the last sentence of the statutory definition of interment states that "[t]he sprinkling of ashes on church grounds shall not constitute interment."  Code § 54.1-2310.

Several other statutes also support this construction of the word interment.  Code § 54.1-2808.1, governing the disposal of human remains, or cremains, for funeral directors, allows disposal "by interment, entombment, inurnment, or by scattering of the cremains."  In enacting this section, the General Assembly distinguished "interment" from the "scattering of cremains."  See, e.g., Forst v. Rockingham Poultry Marketing Cooperative, Inc., 222 Va. 270, 278, 279 S.E.2d 400, 404 (1981)

10

("When the General Assembly uses two different terms in the same act, it is presumed to mean two different things."). Code §§ 57-27.2 and 57-38.1 address the disinterment of interred remains, something not possible for scattered cremains.

Under general usage, interment is "the act or ceremony of depositing a dead body in a grave or tomb." Webster's Third New International Dictionary 1180 (1993). The mere scattering of cremains does not fit within this definition. In sum, interment is more than the scattering of ashes; it requires a permanent and "final disposal" of human remains. As such, Code § 54.1-2310's definition of cemetery does not encompass land used merely to scatter cremains. In addition to the previous sections addressing interment, Code § 15.2-978 also suggests that a cemetery must contain some form of burial. That section allows a locality to promulgate "a register of identified cemeteries, graveyards, or other places of burial." Thus, much like Rockingham County Code § 17-6, Virginia Code § 15.2-978 implies that a cemetery is a "place[] of burial."

In conclusion, neither the common law, current Virginia statutes, nor Rockingham County zoning ordinances support Shilling's arguments that the scattering of cremains creates a cemetery and that a cemetery was created in 1949 by the scattering of Oliver Baker's ashes. Accordingly, the trial court did not err in concluding that a cemetery did not exist

11

on the property at issue prior to or at the time the urn containing the cremated remains of Shilling's mother was buried and that the interment of the urn at that location violated Section 17-27(a) of the Rockingham County Code requiring a special use permit to use the land as a cemetery.

Shilling also assigned error to the trial court's failure to hold that Baker's claims regarding the existence of a cemetery were barred under theories of estoppel or laches. Shilling's claims of estoppel and laches were raised only in response to Baker's counterclaim in the litigation she originally filed. Resolution of this assignment of error, therefore, would not have any impact on the trial court's judgment regarding the decision of the BZA or the relief arising therefrom. Accordingly, we need not consider this assignment of error. Masterson v. Board of Zoning Appeals, 233 Va. 37, 42, 353 S.E.2d 727, 731 (1987). Similarly, because we will affirm the trial court's judgment, we need not address Baker's assignment of cross-error relating to his demurrer in Shilling's appeal from the BZA decision.

Accordingly, for the reasons stated, we will affirm the judgment of the trial court.

Affirmed.

JUSTICE KOONTZ, with whom JUSTICE LEMONS and SENIOR JUSTICE CARRICO join, dissenting.

12

I respectfully dissent. In my view, the "Baker Cemetery" at issue in this case was established prior to the 1984 enactment of the Rockingham County zoning ordinance requiring special use permits for cemeteries. Based upon the undisputed facts in this case, I disagree with the majority's conclusion that the current Virginia statutes do not support Kathryn Shilling's assertion that a private cemetery was created in 1949.

In 1949, the Baker family scattered the ashes of Oliver Edwin Baker upon a scenic hilltop located on his and his wife's farm. Over the ensuing 60 years, the Baker family has disposed of the remains of their dead relatives by conducting funeral services, scattering the ashes of the deceased, and placing memorial plaques upon this fenced hilltop on the Baker farm. Today, this special resting place for the family's loved ones is forever swept away by the majority's view that "some form of actual burial is required to create a cemetery" under Virginia law. Unlike the majority, I am of opinion that the current Virginia statutes do not suggest that an actual burial of remains is a prerequisite to establishing a valid cemetery.

As the majority notes, no Virginia statute existing in 1949 contained a definition of cemetery. It should also be noted that the current Virginia statutes pertaining to cemeteries generally focus on professional cemetery operators

13

and funeral directors, not private landowners.  While this is not dispositive, these statutes, however, do provide guidance and insight on what constitutes a valid cemetery under common law.

Code § 54.1-2310, the definitional section pertaining to cemetery operators, defines "[c]emetery" as "any land or structure used or intended to be used for the interment of human remains."  Furthermore, "[i]nterment" is broadly defined as "all forms of final disposal of human remains including, but not limited to, earth burial, mausoleum entombment and niche or columbarium inurnment."  Id. (Emphasis added.)  Beyond question, "all forms of final disposal of human remains" would include the scattering of cremains upon land dedicated and memorialized for such a purpose.  Thus, I would conclude that the "Baker Cemetery" is land that has been used since 1949 for the interment of human remains.

Additionally, Code § 54.1-2808.1, governing the final disposal of cremains by funeral directors, allows disposal by "interment, entombment, inurnment, or by scattering of the cremains."  Funeral directors must also keep a permanent record of the cremains identifying the "method and site of final disposition."  Id. (Emphasis added.)  The majority concludes that in enacting this statute the General Assembly distinguished "interment" from the "scattering of cremains."

14

If true, however, this statute would also distinguish "entombment" and "inurnment" from "interment," rendering the examples of "interment" in Code § 54.1-2310 meaningless. In my view, this statute simply reflects the commonsense understanding that the scattering of cremains is a form of "final disposal" of human remains.

It is a matter of common knowledge and experience that relatives have the tenderest feelings and emotions for the remains of their dead. Accordingly, "[i]nterments once made should not be disturbed except for good cause." Goldman v. Mullen, 168 Va. 345, 355, 191 S.E. 627, 631 (1937). In this case, the holding of funeral ceremonies, the placing of memorial plaques, the scattering of cremains in a specific area, and the continued upkeep and treatment of the area as the family cemetery, including referring to it as such, all support the conclusion that the "Baker Cemetery" is and has been since 1949 a valid cemetery.

For these reasons, I would reverse the judgment of the trial court, hold that a cemetery did exist on the Baker property since 1949, and remand this case to the trial court to conduct further proceedings to resolve the issues left unresolved in light of this holding.

15