No. 16-0410 - <u>In re: The Remains of Chester Howard West</u>

**FILED**
**June 7, 2017**
released at 3:00 p.m.
RORY L. PERRY, II CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

LOUGHRY, Chief Justice, dissenting:

"'[A]s to the dead, who are not here to answer for themselves, it would be the height of injustice and cruelty to disturb their ashes, and violate the sanctity of the grave[.]'" *Haudenschilt v. Haudenschilt,* 129 W.Va. 92, 121, 39 S.E.2d 328, 343 (1946) (Kenna, J., dissenting) (internal citation omitted). Yet, the majority of this Court has done just that and, in the process, they have opened Pandora's Box. Critically, "[g]ood intentions . . . like bad facts[] sometimes make bad law." *Motorists Mut. Ins. Co. v. Huron Rd. Hosp.*, 653 N.E.2d 235, 239 (Ohio 1995). Consequently, I am impelled to dissent.

Chester Howard West was a veteran of World War I. Prior to his death, his distinguished military service was recognized when he was awarded the Medal of Honor, the United States of America's highest military honor:

> The Medal of Honor is the highest award for valor in action against an enemy force which can be bestowed upon an individual serving in the Armed Services of the United States. [It is] [g]enerally presented to its recipient by the President of the United States of America in the name of Congress.

1

*See http://www.cmohs.org/.* Although Mr. West survived the war, he was murdered in 1935. At the express request of his widow, Maggie VanSickle West, Mr. West's body was laid to rest in her family's cemetery located in Mason County, West Virginia.

The respondent, Hershel Woodrow Williams, is also a Medal of Honor recipient, and he is associated with the Medal of Honor Foundation. Upon learning of Mr. West's status as Medal of Honor recipient, he became concerned that Mr. West's distinguished military service was not being adequately honored because the VanSickle family cemetery, including Mr. West's burial monument, were not being maintained.[1] Having neither a familial or legal relationship to Mr. West, Mr. Williams nonetheless filed a petition in the circuit court seeking to exhume Mr. West's corporeal remains for the purpose of reinterment in The Donel C. Kinnard Memorial State Veterans Cemetery located in Institute, West Virginia.[2] Although Mr. Williams's intent and purpose were clearly

---

[1] The VanSickle family cemetery, once located on private property, is now within the Chief Cornstalk Wildlilfe Refuge owned by the State of West Virginia. Representations were made before the circuit court that the State has blocked the VanSickle family's efforts to access the cemetery for maintenance. I trust that such matters can be resolved so that the family may access the cemetery for visitation, decoration, and/or maintenance purposes.

[2] Dedicated on May 31, 2012, the cemetery is operated by the West Virginia Department of Veterans Assistance. http://www.veterans.wv.gov/offices-facilities/Pages/Donel-C.-Kinnard-Memorial-State-Veterans-Cemetery-.aspx. Following federal guidelines and requirements for eligibility for burial, the cemetery provides "an honorable, dignified resting place for West Virginia's cherished veterans and their closest family members[,]" and it will be able to "accommodate burial space for approximately 60,000 qualified individuals." *Id.*

2

honorable, the circuit court should have dismissed the petition on its face given the obvious lack of standing to file the action.

> Under West Virginia law,
>
>> [s]tanding is comprised of three elements: First, the party attempting to establish standing must have suffered an "injury-in-fact"—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent and not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct forming the basis of the lawsuit. Third, it must be likely that the injury will be redressed through a favorable decision of the court.

Syl. Pt. 5, *Findley v. State Farm Mut. Auto. Ins. Co.*, 213 W.Va. 805, 76 S.E.2d 807 (2002). Mr. Williams clearly cannot meet the *Findley* test. What is his injury, *i.e.*, what legally protected interest has been invaded? Further, what is the causal connection between the injury and the conduct? Other courts have been wisely circumspect in granting standing when the disinterment of a body is sought. *See, e.g., Grisso v. Nolen*, 554 S.E.2d 91, 95-96 (Va. 2001) ("Dillard Nolen [former husband] was a legal stranger to Lorraine Nolen as the result of a divorce decree. As such, and notwithstanding what evidence he might have regarding Lorraine Nolen's wish as to the final resting place of her body, he had no cognizable interest in the place of her burial and, thus, no standing to seek the disinterment of her body for reburial."); *In re Elman*, 578 N.Y.S.2d 95 (N.Y. Sup. Ct. 1991) (finding decedent's sisters, his closest surviving next of kin, had standing to represent wishes of

3

decedent and seek disinterment and reburial in a family plot); *In re Estate of Puder*, 2011 WL

112424 (N.J. Super Ct. App. Div., Jan. 14, 2011) (finding decedent's mother had no standing

under New Jersey rule and statute to challenge decedent's husband's decision to disinter

decedent from crypt and bury decedent in Jewish section of cemetery in familial plot); *Sacred*

*Heart of Jesus Polish Nat. C. Church v. Soklowski*, 199 N.W. 81, 82 (Minn. 1924) (finding

cemetery owner had standing to seek to enjoin disinterment, reasoning that "in guarding the

repose of the dead there interred, and as interested in carrying out the expressed desire of its

members as to their final resting place, we think there can be no question of plaintiff's right

to maintain an action of this sort.").

Without regard for the clear absence of standing, and with no one to raise the

issue since Roger Lee VanSickle, who responded to the petition on behalf of the family, was

self-represented below, the circuit court proceeded to hold an evidentiary hearing on the

petition. Familial descendants of Mr. West[3] testified that they did not want his remains to

be disturbed as they were buried in the VanSickle family cemetery at the express request of

his widow. Notwithstanding the family's opposition, and lacking any statutory authority to

---

[3]It appears that Mr. West has no consanguine descendants. The family members who appeared to oppose Mr. West's exhumation were related to him by marriage through his widow, who died in 1953. *See, e.g.,* W.Va. Code § 11-6B-2(3) ("'Family member' means a person who is related by common ancestry, adoption or marriage including, but not limited to, persons related by lineal and collateral consanguinity.").

4

grant the petition,[4] the circuit court invoked its inherent power to rule in equity and ordered the exhumation of Mr. West's corporeal remains and reinterment in the veteran's cemetery in Institute so that his "memory is preserved as a recipient of the Medal of Honor." As discussed more fully below, there are other means through which this commendable goal may be realized.

It is incumbent upon us all to honor the lives of our veterans who have fought to safeguard our liberties and freedom. There is perhaps no higher cause than answering the call to defend one's country when peaceful resolutions fail. Recognizing the nearly immeasurable sacrifice made by our veterans, I am moved, as are so many West Virginians, by the hallowed grounds of our military cemeteries—not only those here at home but also those scattered around the globe.[5] As President John F. Kennedy, a highly-decorated veteran

[4]There are highly limited instances under West Virginia statutory law where a body may be disinterred, none of which are applicable in the instant matter. *See, e.g.,* W.Va. Code § 37-13-1 (providing that owner of private property may bring action seeking order allowing for disinterment of human remains on said property for reburial).

[5]Thousands of our nation's servicemen and women are laid to rest in locations throughout the world. Just a few examples include the Aisne-Marne American Cemetery located in Belleau, Northern France, where 2,289 members of the United States military who died in World War I are buried; the Ardennes American Cemetery in Ardennes, Belgium, where the graves of 5,329 members of the United States military who died in World War II are located; the Brookwood American Cemetery in the British Isles and home to the graves of 468 members of the United States military who died in World War I; the Cambridge American Cemetery in Cambridge, England, which has approximately 3,812 graves of American military persons, including airmen who died over Europe and sailors from North Atlantic convoys; the Epinal American Cemetery located in Dinozé, France, which has

(continued...)

5

himself, once remarked: "I do not believe that any nation in the history of the world has buried its soldiers farther from its native soil than we Americans—or buried them closer to the towns in which they grew up."  To this I can attest.

At different points in my life, I have been to many of these  sacred venues both here and abroad.  As a young man, I visited the Arlington National Cemetery in Virginia, which has been aptly called a place "where valor rests."  Anyone who has witnessed the inimitable "Changing of the Guard" ceremony at the Tomb of the Unknown Soldier can speak to the solemnity of this consecrated place.  Some years later, I had the privilege of visiting the Normandy American Cemetery and Memorial in France where I paid my respects to those lost during the Battle of Normandy, many of whom were killed on D-Day.  The incredible emotion that rises up as you survey that picturesque yet tragic site remains with you for a lifetime.  From every angle and vantage point, the white crosses stand in perfect symmetry, each representing its own noble narrative about an American warrior who made the ultimate sacrifice for our nation.  Such hallowed places serve as poignant reminders of the truly heart-rending cost of freedom.

---

[5](...continued)
graves of 5,255 United States' military who died in military campaigns during World War II; the Florence American Cemetery in Florence, Italy, which is home to 4,402 members of the United States military who died during World War II; and the Manila American Cemetery located in Manila, Philippines, where there are the graves of 17,206 U.S. personnel killed during World War II. *See* https://abmc.gov/cemeteries-memorials#.WLRD500zWos.

We need not travel beyond our own state to find a place of such reverence built to accommodate for all eternity the finest among us. West Virginia has its own veterans cemeteries and, in my humble estimation, The Donel C. Kinnard Memorial State Veterans Cemetery is as beautiful and dignified a resting place as any veterans' cemetery in the world. It is indisputable that being laid to rest among fellow patriots in so honorable a place provides our West Virginia veterans with the respect befitting their service and sacrifice. Yet, we cannot lose sight of the fact that, both legally and equitably, the highest honor that can be bestowed on those who have fought for our freedoms is one which protects, not disrespects, their chosen final resting place.

Perhaps most important to this matter is the fact that there are other ways to honor Mr. West's distinguished military service and status as a Medal of Honor recipient short of instituting a legal proceeding seeking to compel his exhumation. As one family member suggested during her testimony, Mr. Williams could set a monument to honor the veterans of Mason County and leave Mr. West's remains undisturbed. In fact, there is a long tradition in this country of honoring those persons who have distinguished themselves in service to our country, but whose corporeal remains lay elsewhere.

Our nation's Capitol is home to numerous monuments, such as the Washington Monument, the Jefferson Memorial, and the Lincoln Memorial. Yet, President Washington

7

is entombed at Mount Vernon; President Jefferson is buried at Monticello; and President Lincoln is entombed in Springfield, Illinois. Although the physical remains of these great men do not lay beneath their memorials in Washington, D.C., we honor and respect their service to this country through these commemorations. Another example is the Vietnam Memorial in Washington, D.C., on which the names of more than 58,000 Americans who gave their lives in service to our nation during the Vietnam War are inscribed. Clearly, we honor the service and sacrifice of each person on the Wall even though their bodily remains were laid to rest elsewhere.[6]

---

[6]In 1988, as a high school senior, I had the honor of participating in the Presidential Classroom, a week-long educational program held in Washington, D.C. Already possessing a deep respect for the brave and selfless service provided by this nation's veterans, including my father, who is an Air Force veteran, I was particularly moved by the memorials to our veterans that I visited that week. When later interviewed by the *Dominion Post* concerning my experience in our nation's capital, I shared my observations in visiting the Vietnam Memorial, as follows:

> "Probably the most touching thing we saw was the Vietnam Memorial," [Loughry] said. "When you hear people talking [about] 58,000 people [who] died in that war, you say[,] 'That's a lot of people.' But to actually see the names written on the [wall] and see the parents, the brothers and sisters standing there and crying, it brings it home. It makes you think."

Kathy Plum, *Tucker student spends week in D.C.*, Dominion Post, April 24, 1988. The emotions experienced by me and many other students on that day more than twenty-nine years ago were felt because of the powerful and respectful manner through which those brave men and women were being honored, regardless of the fact that their corporeal remains were laid to rest elsewhere.

In short, the exhumation of Mr. West's earthly remains is completely unnecessary to fulfill Mr. Williams's admirable wish to honor Mr. West's distinguished military service. In fact, the circuit court's order references the Gold Star Family Memorial Monument established by the Medal of Honor Foundation within The Donel C. Kinnard Memorial State Veterans Cemetery. If that particular monument cannot be employed in some manner to honor Mr. West's memory and status as a Medal of Honor recipient, then perhaps another monument could be erected in the cemetery to honor not only Mr. West, but all West Virginians who receive the Medal of Honor but who either have been or will be laid to rest elsewhere.

Not only is the majority's decision both legally and equitably wrong, I am deeply concerned that a dangerous precedent has been set that threatens the sanctity of burial in this state. Will third-parties now have an imprimatur to seek the disinterment of any person with whom they have no relationship, either legal, familial, or otherwise, if their purpose is sufficiently laudable? Further, will a laudable purpose alone be sufficient, or will an ill-maintained cemetery also be required for court-ordered disinterment? Moreover, by what standards will a circuit court determine whether the purpose for disinterment is sufficiently commendable or whether a cemetery's maintenance is sufficiently inadequate to warrant disinterment?

9

Lastly, and to the extent the majority's holding extends the risk of a judicially ordered disinterment to any deceased person in this State, I would caution lawyers engaged in estate work to apprise their clients–veterans and non-veterans alike–that if they wish their final resting place to be just that–*final*–their wish needs to be explicitly set forth in their testamentary papers with the caveat that their corporeal remains never be moved absent particularized circumstances. Unlike Mr. West, there may not be someone to defend a decedent's final resting place, but perhaps a recorded will containing specific burial instructions would carry some weight when a legal action is instituted seeking to disinter a person twenty, fifty or, as in the case at bar, nearly a hundred years later.

For these reasons, I respectfully dissent.