COURT OF APPEALS OF VIRGINIA

Present:   Judges O'Brien, Russell and Retired Judge Bumgardner[*]
Argued at Norfolk, Virginia

UNPUBLISHED

CYNTHIA M. OWENS AND
 RICHARD L. OWENS

                                              MEMORANDUM OPINION[**] BY
v.       Record No. 1707-17-1              JUDGE WESLEY G. RUSSELL, JR.
                                                    AUGUST 7, 2018
CITY OF VIRGINIA BEACH AND
 STATE BUILDING CODE TECHNICAL REVIEW BOARD


           FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
                            William R. O'Brien, Judge

           Cynthia M. Owens for appellants.

           Justin I. Bell, Assistant Attorney General; Tobias Eisenlohr,
           Assistant City Attorney (Mark R. Herring, Attorney General;
           Heather Hays Lockerman, Senior Assistant Attorney General; Mark
           D. Stiles, City Attorney; Beverly K. Wilson, Deputy City Attorney;
           Gregory D. Surber, Associate City Attorney, on brief), for appellees.


       Cynthia and Richard Owens ("appellants") appeal, pursuant to the Virginia Administrative

Process Act ("VAPA"), an order of the circuit court dismissing on mootness grounds their appeal

from a decision of the State Building Code Technical Review Board ("State Board").  The State

Board had dismissed as moot appellants' appeal of the local board's decisions related to a roofing

project at appellants' condominium that was performed under a permit issued by the City of

Virginia Beach ("City").  Because there is no relief currently available to appellants related to the

project at issue, we affirm the judgment of the circuit court.

---

[*] Judge Bumgardner participated in the hearing and decision of this case in his capacity
as a senior judge of this Court prior to July 1, 2018 and thereafter by designation pursuant to
Code § 17.1-400(D).

[**] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

BACKGROUND

In December 2015, appellants hired a licensed Class A contractor ("first contractor") to renovate part of their condominium roof. The project entailed demolishing a small, flat portion of the existing roof and then replacing it with a new pitched roof. Appellants hired a structural engineering firm ("first engineering firm") to create an engineering plan for the proposed work. The first contractor applied for a building permit for the work from the City. The application included the plan generated by the first engineering firm, which subsequently was revised. The City issued a permit and work commenced.

In January 2016, the first contractor "demolished the existing flat roof; fastened the new rafters to the ledger boards; framed a soffit; and installed plywood and fire retardant OSB roof sheathing." Prior to the roof being completely installed, the first contractor took pictures of the work and presented them to the first engineering firm. The first contractor requested an inspection from the City. The first engineering firm reviewed the photos and submitted them to the City with a report indicating that "the ledger and rafter connections . . . appear to be installed according to the plans prepared by [this] office." Neither the City nor the first engineering firm visited the site. The City accepted the first engineering firm's report based on its written policy allowing for third-party inspections and gave the project a "final" passing inspection status. The City subsequently agreed at the hearing before the local review board that the passing status should have reflected "framing" rather than "final."

Six months after the initial passing inspection, appellants challenged the inspection and requested "an onsite inspection of the roof deficiencies" as noted in an attached report prepared by another roofing consultant hired by appellants. On June 28, 2016, the City responded by letter stating it acknowledged appellants' request to cite the first contractor and informing them that upon its review of its records and information submitted by appellants that the City "will not cite the

[first] contractor for building code violations." Appellants then sent a letter seeking confirmation that the City's response constituted implied denials of requests for further inspection and to revoke the passing inspection.

On July 13, 2016, appellants submitted a notice of appeal to the Virginia Beach Board of Building Code Appeals ("local board"). The appeal to the local board specifically requested three things: an order requiring that "an onsite inspection of the [first] contractor's work" be performed; that "the passing inspection of the work" done by the first contractor be "revoke[d]"; and that the first contractor be cited "for violating the statewide building code." In their request for relief, appellants expressly requested that, for any remedial work required to bring the project to code, they be allowed to use another contractor.

The local board held its review hearing on August 2, 2016. After much discussion of the potential deficiencies in the inspection, the permitted design, and the first contractor's work, the local board asked appellants explicitly, "What do you want from here?" Appellants responded that they wanted "the passing inspection [to] be revoked." The local board then asked, "[I]f it is revoked, what do you want?" Appellants indicated that they sought "revocation of that inspection." Appellants indicated that they did not wish for the first contractor to rip off the whole roof.

During the hearing, it was discussed that, when a notice of violation is issued, the deficient contractor is given a period in which to cure the deficiency. Appellants reiterated their desire for the first contractor to do no further work on the project and indicated that they were withdrawing their request that the first contractor be cited. When it was reiterated that "[i]n order to cite a contractor for a violation . . . the contractor has to have an opportunity to abate and correct the situation . . . ," appellants responded by indicating that they were no longer "asking for a citation of a violation" and that they wished "to make this clear . . . ."

- 3 -

The local board deliberated whether "to deny the appeal and uphold the decision of the Building Code Official." After the hearing, the local board issued a resolution denying the appeal. On August 22, 2016, appellants filed an application of appeal of the resolution to the State Board.

While the appeal to the State Board was pending, appellants had a second structural engineering firm ("second engineering firm") review the plans for the project and visit the project site to look at then-current conditions. The second engineering firm also reviewed photographs and videos from prior construction and demolition. The second engineering firm prepared written reports of their findings and opinions. Specifically, they opined that some of the new roof construction had not been properly connected to the roof's existing framing, per the plan. The record also contains a letter from a third structural engineering firm that observed the project site as it existed on September 27, 2016. This firm concluded that the soffit addition appeared to conform with the original design and that the ceiling joists were within prescribed limits.

The State Board conducted its review hearing on January 20, 2017. At the hearing, the City stated it had looked at new information and had decided to accept the letters from the other roofing experts "as cause to reject the prior third-party inspection . . . dated January 6, 2016." The City noted that "the roof in question has been removed and destroyed." The City stated that it accepted the second engineering firm's analysis as a third-party inspection under its policy. The City further stated that, in accordance with the new inspection, it would issue a notice of violation to the first contractor.

However, in the time intervening between their appeal to the local board and the State Board hearing, appellants had obtained another permit for a different design. They hired a new contractor ("second contractor"), who performed the work described in the new design. Thus, no portion of the original work by the first contractor remained, and the roof put on by the second contractor occupied the space where the original design was to be located. In short, the

originally permitted project that was at issue in the appeal no longer existed and could no longer be performed.

In the course of the hearing, the State Board asked appellants what was left to be done given the concessions made by the City. Appellants responded:

> [W]hat's hanging out there judicially, in terms of an adjudication, is that there is no ruling and nothing to prevent [the City] from continuing in this practice . . . [because] there's no ruling on whether or not . . . the local appellate board [] ruled properly[] that this third-party inspection was acceptable under the . . . code. If it was contrary to law, that's something that is justiciable. It's an issue that can and should be adjudicated. This could happen again.[1]

In its February 17, 2017 decision, the State Board addressed appellants' contention regarding the possible application of the City's practice of accepting inspections based on photographs. After noting that appellants contended that the practice was flawed and required reevaluation, the State Board concluded that it did "not have any statutory authority over local government policies" and declined to reach that issue. The State Board found that changed circumstances regarding the original project and the City's concessions rendered the enumerated issues in appellants' appeal to the local board moot.

Appellants then appealed the State Board's decision to the circuit court pursuant to VAPA. Appellants' petition for appeal recited that the appeal before the local board concerned the City's "refusals to conduct an onsite inspection of work performed by a contractor[,] to revoke the passing inspection of the contractor's . . . work[, and] to cite the contractor for violating the Uniform Statewide Building Code." The petition then asserted that such "refusals were based on the [City's] approval of a so-called *third-party inspection report* (in lieu of an

---

[1] Appellants recognized that third-party inspections were permissible; they objected to the City accepting an inspection, whether performed by a third-party or by the City, that was based only on photographic review as opposed to a site visit.

inspector performing an inspection), which appellants . . . argued was unlawful."  In response, the City and State Board separately sought dismissal on the grounds that appellants failed to "designate and demonstrate an error of law" as recognized under VAPA.  The City further contended the matter was moot.

The circuit court held a hearing on September 7, 2017.  During argument, appellants confirmed that the original project and the work done on it by the first contractor no longer existed, conceding that "there's nothing to inspect now."  Appellants insisted that, despite this, they were entitled to a ruling on whether the City's practice regarding acceptance of photographic third-party inspections was valid because they might seek to have additional work done on the condominium in the future.

The circuit court issued a verbal ruling from the bench at the conclusion of the hearing.  It granted the various motions filed by the City and the State Board, finding that the case was moot.  The circuit court memorialized its ruling in a September 29, 2017 order, which appellants now appeal to this Court.

ANALYSIS

Appeals taken from the State Board are governed by VAPA.  Code § 2.2-4026 provides that "[a]ny . . . party aggrieved by and claiming unlawfulness of a case decision . . . shall have a right to the direct review thereof by" the appropriate circuit court, whose judgment is further subject "to appeal to or review by higher courts as in other cases . . . ."  As provided by Code § 17.1-405, an appeal from a circuit court's decision in a VAPA appeal may be brought to this Court by "[a]ny aggrieved party[.]"

However, before we can reach the issues raised in such an appeal, we must first determine whether, although falling within our subject matter jurisdiction, the matter is otherwise properly before us.  Other considerations, such as the doctrines of mootness and standing, can prohibit us

from addressing the merits of an appeal. Applying these doctrines to the issues raised by appellants, we determine that, given the changed factual circumstances over the course of the litigation, there is no longer a viable appellate claim that we can adjudicate on the merits.

## I. Mootness

A case is moot if the relief requested by a litigant can no longer be granted, rendering any determination by a court merely advisory. In describing the mootness doctrine, the Supreme Court has observed, "'[w]henever it appears . . . that there is no actual controversy between the litigants, or that, if it once existed it has ceased to do so, it is the duty of every judicial tribunal not to proceed to the formal determination of the apparent controversy, but to dismiss the case.'" McCarthy Holdings LLC v. Burgher, 282 Va. 267, 275, 716 S.E.2d 461, 465 (2011) (quoting Hankins v. Town of Virginia Beach, 182 Va. 642, 643, 29 S.E.2d 831, 832 (1944)).

The controversy here is framed by appellants' initial pleading, the appeal they filed with the local board. That appeal asserted that the decision of the local officials was in error and entitled appellants to relief in three enumerated ways: (1) an onsite inspection of the work performed by the first contractor; (2) revocation of the permit for the project undertaken by the first contractor; and (3) that a citation be issued to the first contractor for allegedly substandard work done while working on the project subject to that permit. The circuit court determined that the changes in circumstances during the course of the litigation below had resulted in a situation where no order of the circuit court could provide appellants with the requested relief, and therefore, the case was moot. Reviewing each item of requested relief, we agree with the circuit court.

## A. Onsite Inspection of the Work Performed by the First Contractor

Appellants acknowledged before the circuit court and in argument before this Court that all of the work performed on the project by the first contractor had been destroyed when

appellants elected to have another contractor, operating under a different permit and set of plans, build a new roof. Specifically, when questioned by this Court, appellants confirmed that there was "no more work by [the first contractor] that could be subject to an onsite inspection." Given the concession that an onsite inspection of the work performed by the first contractor is impossible, no order of this or any other court can grant appellants the relief requested. Accordingly, the circuit court did not err in finding this claim for relief moot.

## B. Revocation of the Original Permit

Appellants' second request for relief was for an order compelling City officials to revoke the passing inspection that allowed the initial project to go forward. As noted above, it is undisputed that the project that was subject to the inspection no longer exists. The work that was given a passing inspection has been destroyed, and the project subject to the initial permit ceased to exist when the second contractor built a new project with a new design in the space where the initial project was to be. Because the inspection at issue inextricably is tied to the initial work and the initial project which no longer exist, whether the work received a passing inspection or not is an irrelevancy. Accordingly, the circuit court did not err in finding this claim for relief moot.

## C. Citation of the First Contractor[2]

The third specific request for relief was a demand that the first contractor receive a citation for its alleged violations of the building code. Although, from the record, it appears that appellants unequivocally withdrew their request for this relief in the proceeding before the local board, it also appears that the local board, the State Board, and the circuit court all considered it

---

[2] Given our resolution of this issue, we do not consider whether the first contractor was a necessary party to proceedings that, if appellants were successful, could have resulted in it being cited for a violation.

and issued rulings related to it. Accordingly, we will assume without deciding that it was properly before each of those entities, and thus, is before us.

There is a disagreement among the parties as to whether the first contractor received a notice of violation for its work on the initial project. Although no evidence of such a notice of violation is included in the record before us, the City represented at the hearing before the State Board that it issued or would issue such a notice. Based on this representation, the State Board found this request for relief moot. Appellants argue that the City never issued such a notice of violation.

Given all of the circumstances, resolution of the factual dispute is unnecessary to resolution of this issue. It was undisputed in the proceedings below that, before a citation could issue, the first contractor would need to receive a notice of violation and be provided an opportunity to cure any deficiencies. Appellants made clear at the hearing before the local board that the first contractor would not be allowed to undertake an attempt at remedying any deficiencies. Even if they experienced a change of heart during the intervening proceedings, the possibility of any such remedial work was destroyed when appellants abandoned the project and the work undertaken by the first contractor was destroyed so that appellants could proceed with their new project. Accordingly, the circuit court did not err in finding this claim for relief moot.[3]

D. Declaration Regarding City's Practice Regarding Photographic Inspections

Although appellants specifically did not request additional relief in the appeal to the local board, they argue that an additional issue, which underlay all of their complaints, was sufficiently presented in the proceedings below to be before us. Specifically, appellants claim they are entitled to a ruling on whether the City's practice of accepting inspections based on

_____

[3] Additionally, at oral argument, appellants affirmatively represented that, as a result of the passage of time, the first contractor could no longer be cited for work performed on the initial project. If this representation is accepted, the claim for relief is moot for that reason as well.

photographs complies with statutory requirements. Assuming without deciding that the issue was sufficiently raised below to survive as an issue on appeal, we find that any such request is moot.

Much like the inspection itself, any practice implemented by the City to effectuate the inspection of the first contractor's work on the initial project is inextricably intertwined with that project. Once the project ceased to exist, any potential issues with the inspection of that project ceased to exist. See, Section I(B) above. Necessarily, that includes any legal issues regarding how the City performed that inspection or, in the case of a third-party inspection, allowed it to be performed. If we were to agree that a different practice was required for the inspection of the initial project, our conclusion would be a nullity because no new inspection can be undertaken regarding a project that no longer exists. Because it is no longer possible for any decision of this or any other court to affect the manner in which the inspection of the initial project was conducted, appellants' claims regarding the practice utilized by the City in this matter are moot.[4]

In an attempt to save their claim regarding the City's practice, appellants argue the issue is not moot because of potential permits that they may seek in the future. They reason that, if they seek additional permits for new projects, they would be adversely affected if the City utilized the same practice. However, as will be discussed below, appellants lack standing to seek relief regarding this prospective claim of hypothetical future injury.

---

[4] Appellants ask us to find that this claim falls within the "capable of repetition yet evading review" exception to the mootness doctrine. See generally, Ingram v. Commonwealth, 62 Va. App. 14, 22, 741 S.E.2d 62, 66 (2013) (acknowledging the doctrine, but recognizing that it "should be used sparingly" and in "exceptional situations") (internal quotation marks and citations omitted). We decline to do so based on our conclusion that the mootness doctrine does not prevent a person allegedly aggrieved by the application of the City's practice to an *existing* project from bringing the claim. We offer no opinion as to whether such a claim otherwise would be cognizable in a VAPA appeal.

## II. Standing

"Standing to maintain an action is a preliminary jurisdictional issue having no relation to the substantive merits of an action." Andrews v. Am. Health & Life Ins. Co., 236 Va. 221, 226, 372 S.E.2d 399, 402 (1988). "The point of standing is to ensure that a person who asserts a position has a substantial legal right to do so and that his rights will be affected by the disposition of the case." Grisso v. Nolen, 262 Va. 688, 693, 554 S.E.2d 91, 94 (2001). The doctrine requires that a litigant have a "sufficient interest in the subject matter of the case so that the parties will be actual adversaries and the issues will be fully and faithfully developed." Cupp v. Board of Supervisors, 227 Va. 580, 589, 318 S.E.2d 407, 411 (1984).

In addition to these general standing requirements, a litigant pursuing an appeal under VAPA must be a "party aggrieved by and claiming unlawfulness of a case decision." Code § 2.2-4026. The Supreme Court has made clear that "the word "aggrieved" . . . contemplates a substantial grievance and means a denial of some personal or property right, legal or equitable, or imposition of a burden or obligation upon the petitioner *different from that suffered by the public generally*." Va. Marine Res. Comm'n v. Clark, 281 Va. 679, 687, 709 S.E.2d 150, 155 (2011) (emphasis added) (citation omitted). Absent such a direct, non-generalized interest, a party lacks standing under VAPA.

Although appellants may have had such a direct interest regarding the application of a City inspection practice to the initial project, any such direct interest evaporated when the project ceased to exist. Regarding any hypothetical future projects to which the practice may or may not be applied, appellants are situated no differently than any other member of the general public who may undertake such a project in Virginia Beach in the future. Accordingly, appellants lack standing to assert a claim for hypothetical, future injuries that might occur.

CONCLUSION

Because no order of this or any other court can grant appellants the relief they sought related to the initial project that was the subject of the case decision that underlies this VAPA appeal, the circuit court correctly concluded that the matter was moot. Accordingly, the judgment of the circuit court is affirmed.

Affirmed.