OPINION OF THE COURT
Arlene P. Bluth, J.
The court finds that there are fact issues that require an evidentiary hearing to determine the burial wishes of the decedent, Frieda Mandelbaum Leszkowitz (Leszkowitz).
Petitioner, Leszkowitz’s sister, brings this amended petition, by order to show cause, to allow, permit and direct Leszkow-itz’s body to be disinterred and flown to Israel for burial.
Respondents David Leszkowitz (David) and Shelly Leszkow-itz Mishal (Shelly), Leszkowitz’s surviving children, cross-move to dismiss petitioner’s petition on the ground that petitioner lacks standing pursuant to CPLR 3211 (a) (3).
Background
This proceeding arises out of the death of Ms. Frieda Man-delbaum Leszkowitz on July 19, 2016. She was buried at Mount Hebron Cemetery in Flushing, New York on July 20, 2016.
Petitioner contends that this burial was improper and that Leszkowitz wished to be buried in the Eretz Hachaim Cemetery located in Jerusalem, Israel. Petitioner insists that David and Shelly colluded with respondents Plaza Jewish Community Chapel and Cedar Grove Cemetery Association to have Lesz-kowitz buried in the Mount Hebron Cemetery even after they were informed that the burial was contrary to Leszkowitz’s wishes.
Petitioner asserts that Leszkowitz purchased a burial plot in Eretz Hachaim Cemetery in Israel and that Leszkowitz inspected this plot during a visit to Israel in November 2013. *1082 Petitioner also submits affidavits that purport to show that Leszkowitz expressed her desire on multiple occasions to be buried in Israel.
David and Shelly dispute petitioner’s account of the facts. They insist that the deed for the burial plot in Israel was not signed by Leszkowitz and that petitioner provides no evidence that Leszkowitz ever paid for the burial plot. David and Shelly also dispute petitioner’s claims that they had a strained relationship with Leszkowitz. David and Shelly also maintain that it was Leszkowitz’s wish to be buried next to her ex-husband and child in the Mount Hebron Cemetery. David and Shelly assert that Leszkowitz had a close relationship with their father, her ex-husband, despite their two divorces. David and Shelly also claim that although Leszkowitz’s parents are buried in Israel, the Eretz Hachaim Cemetery is located about 40-50 miles from where Leszkowitz’s parents are buried and Leszkowitz has no living relatives in Israel.
Discussion
“The quiet of the grave, the repose of the dead, are not lightly to be disturbed. Good and substantial reasons must be shown before disinterment is to be sanctioned” (Matter of Currier [Woodlawn Cemetery], 300 NY 162, 164 [1949] [citations omitted]).
“While the disposition of each case is dependent upon its own peculiar facts and circumstances and while no all-inclusive rule is possible, the courts, exercising a benevolent discretion, will be sensitive to all those promptings and emotions that men and women hold sacred in the disposition of their dead” (id. [internal quotation marks and citations omitted]).
“And looming large among the factors to be weighed are the wishes of the decedent himself” (id.).
“A body interred in a lot in a cemetery owned or operated by a corporation incorporated by or under a general or special law may be removed therefrom, with the consent of the corporation, and the written consent of the owners of the lot, and of the surviving wife, husband, children, if of full age, and parents of the deceased. If the consent of any such person or of the corporation can not be obtained, permission by the county court of the county, or by the supreme court in the district, where the cem *1083 etery is situated, shall be sufficient.” (N-PCL 1510 [e].)
“If a person designated to control the disposition of a decedent’s remains, pursuant to this subdivision, is not reasonably available, unwilling or not competent to serve, and such person is not expected to become reasonably available, willing or competent, then those persons of equal priority and, if there be none, those persons of the next succeeding priority shall have the right to control the disposition of the decedent’s remains” (Public Health Law § 4201 [2] [b]).
David and Shelly cross-move to dismiss the petition on the ground that petitioner lacks standing to bring this matter. They claim that Leszkowitz’s will does not authorize petitioner (who is the executrix of the will) to make a determination regarding the disposition of Leszkowitz’s remains.
David and Shelly further claim that pursuant to Public Health Law § 4201 (2) (a), David and Shelly are third in line to determine the disposition of Leszkowitz’s remains. They also claim that since the first two persons with priority to determine the disposition of remains are inapplicable (a person designated in a written statement or a surviving spouse), David and Shelly properly made the decision to bury Leszkowitz and petitioner lacks standing to bring this proceeding. David and Shelly also claim that petitioner lacks standing to bring this action pursuant to N-PCL 1510 (e). They claim that only those specifically enunciated in the statute can bring an action for disinterment.
In opposition, petitioner claims that David and Shelly are not competent, pursuant to Public Health Law § 4201, to control the disposition of Leszkowitz’s remains. Petitioner asserts that as a surviving sibling, she would then be next in line to determine the disposition of Leszkowitz’s remains. Petitioner contends that she has standing pursuant to N-PCL 1510 (e) because the court can order such relief and no court has ever defined the class of people who may bring such a proceeding.
Analysis
“Sparse case law exists interpreting the recent enactment of Public Health Law § 4201 which, inter alia, prioritizes the persons authorized to control a decedent’s remains, and immunizes entities such as funeral homes, cemeteries, and crematories from civil liability for their good faith disposal of human *1084 remains upon the direction of a person enumerated in and prioritized by Public Health Law § 4201 (2) (a)” (Mack v Brown, 82 AD3d 133, 135 [2d Dept 2011]).
Here, because there is no written instrument that designates a person to control the disposition of Leszkowitz’s remains, Leszkowitz’s surviving children clearly have priority over petitioner. However, priority does not mean that petitioner lacks standing to bring this proceeding (see Turner v Owens Funeral Home, Inc., 140 AD3d 632, 634 [1st Dept 2016] [finding that decedent’s granddaughter had standing to bring claims regarding disposition of grandfather but did not have priority and dismissing granddaughter’s claims because adult children evidenced a willingness to control the disposition of the decedent’s remains]; see also Shepherd v Whitestar Dev. Corp., 113 AD3d 1078, 1080 [4th Dept 2014] [holding that decedent’s brother had standing but not priority over decedent’s adult children]). Therefore, petitioner has standing to bring this proceeding pursuant to Public Health Law § 4201.
Petitioner also has standing pursuant to N-PCL 1510 (e). As David and Shelly acknowledge in their memorandum of law, courts have not affirmatively stated who may seek a court’s permission to disinter (mem of law at 8). The statute clearly permits a party to seek a court order for disinterment regardless of the status of the person seeking it. David and Shelly’s argument that there would be an impermissibly broad scope of persons permitted to bring a disinterment proceeding if petitioner was allowed to bring this matter is misplaced. David and Shelly’s parade of horribles regarding the class of people who could bring a disinterment proceeding loses sight of the purpose of this type of proceeding. Public policy favoring judicial economy is not prioritized over a court’s solemn responsibility to identify a decedent’s intended final resting place.
A disinterment proceeding, unlike the public nuisance case cited by David and Shelly, provides an opportunity for persons to appeal to a court when they believe they have evidence demonstrating that a person’s wishes regarding her final remains have not been followed. Even if a person completely unrelated to a decedent — say, a coworker or best friend — has evidence that the decedent had certain wishes for the disposition of her remains, should a court refuse to even consider this application simply because of a person’s status? Of course not. *1085 If anyone has such evidence and feels strongly enough to want to speak for the dead and bring a proceeding, the law allows it.
Considering such an application does not mean that a decedent’s remains would be automatically disinterred; it only means that the doors to the courthouse are open to hear all the relevant evidence and to make an impartial decision as to decedent’s wishes. Case law clearly disfavors disturbing a body once it has been buried. But the financial incentives involved in bringing other types of actions, such as the public nuisance case cited by David and Shelly, are not present in a disinterment proceeding. Therefore, there is no reason for this court to arbitrarily create á rule that prevents the sister of a decedent, the executrix of the decedent’s estate, or anyone else from bringing a disinterment proceeding.
A key question for this court is whether David and Shelly are competent, under the meaning of the Public Health Law, to carry out the disposition of Leszkowitz’s remains. One court has held that competence means a willingness “to act in conformance with her wishes and desires” (Maurer v Thibeault, 20 Misc 3d 631, 637 [Sup Ct, Cortland County 2008]). The term competent is not defined in the Public Health Law, “but given the apparent legislative intent that a decedent’s directions and wishes be honored insofar as practicable, it seems reasonable to consider a person’s ability and willingness to carry out those wishes, to the extent they are known, when assessing competency” (id. at 634 [internal quotation marks omitted]).
The court must also reconcile the intersection between the priority list in Public Health Law § 4201 (2) (a) and the case law directing courts to consider the wishes of the decedent. The parties have provided no support for the notion that the Public Health Law prohibits a court’s inquiry into the decedent’s wishes and, instead, shifts the decision-making regarding the disposition of remains to the persons listed in Public Health Law § 4201 (2) (a). The court finds that this list merely details persons who have the responsibility to dispose of a decedent’s remains rather than designate people who would decide, without accounting for the decedent’s wishes, how to dispose of those remains. This conclusion is buttressed by Public Health Law § 4201 (2) (c), which compels “the person in control of the disposition, pursuant to this section” to “faithfully carry out the directions of the decedent to the extent lawful and practicable” and “in a manner appropriate to the moral and individual beliefs and wishes of the decedent.”
*1086 The conflicting evidence before this court requires that there be an evidentiary hearing to determine the wishes of the decedent. “Where the papers and pleadings in a proceeding pursuant to N-PCL 1510 (e) raise a material issue of fact concerning the burial wishes of a decedent, an evidentiary hearing is required” (Matter of Briggs v Hemstreet-Briggs, 256 AD2d 894, 895 [3d Dept 1998]).
David submits an affidavit where he claims that, within the past year (which would be after the plot in Israel was purchased) Leszkowitz expressed a desire to be buried next to her ex-husband and deceased son in New York (aff of David Leszkowitz ¶ 5).
Petitioner submits the affidavits of her daughter (Leszkowitz’s niece), two home health care workers, and her own affidavit, all claiming that Leszkowitz expressed a desire to be buried in Israel.
These conflicting accounts of Leszkowitz’s wishes compel this court to hold an evidentiary hearing to assess the credibility of the witnesses and determine these issues of fact.