No. 16-0410 – *In re: Remains of Chester Howard West*

WORKMAN, Justice, dissenting:

**FILED**

**June 7, 2017**

**released at 3:00 p.m.**
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

In this case, we confront the question of whether a person with honorable intentions but absolutely no personal connection to or familial relationship with a deceased person has a unilateral right to remove the deceased's remains, contrary to both the wishes of his widow and his remaining kin. The majority permits this result in the face of such familial objection ostensibly because it agrees that a stranger to the deceased will provide a resting place more befitting the deceased than his family.

An American hero, First Sergeant Chester Howard West (hereinafter "Sgt. West") was the recipient of the Congressional Medal of Honor for his courageous service at the age of 20 during battle as a member of the 363rd Infantry Regiment of the U.S. Army 91st Division. Sgt. West survived the war, but died seventeen years later, still a young man at age 37, leaving a young widow, Maggie VanSickle. Maggie made the decision to bury her husband in the VanSickle family cemetery in Mason County, and he has been at his eternal rest for now more than eighty-two years.

Hershel Woodrow Williams (hereinafter "Mr. Williams"), another American hero and recipient of the Congressional Medal of Honor, discovered that Sgt. West's gravesite was not well-cared for in the VanSickle family cemetery, which is located in a remote area of Mason County within the Chief Cornstalk Wildlife area which

1

is owned and managed by the State. Mr. Williams unilaterally decided that Sgt. West's remains should be removed to the Donald C. Kinnard cemetery—a location which Mr. Williams believes to be a more honored resting place. The lower court and the majority permit this disinterment by Mr. Williams on the basis of a weighing of the equities, finding that the VanSickle family cemetery is not a "place of honor" and that by being removed to the Kinnard cemetery, he may be more appropriately honored and potentially re-connected with "lost family member[s]."

This analysis is simplistic and to some appealing, but there is a major obstacle to this reasoning: the important concept in American jurisprudence called "standing," which the majority does not even address. "The point of standing is to ensure that a person who asserts a position has a substantial legal right to do so[.]" *Cupp v. Bd. of Supervisors*, 318 S.E.2d 407, 411 (Va. 1984) (internal citation omitted). More specifically, "[s]tanding requires that a party seeking relief have a *legally cognizable interest in the subject matter* and that he has a threatened or actual injury." *Eastern Mo. Laborers Dist. Council v. St. Louis Cty.,* 781 S.W.2d 43, 46 (Mo. 1989) (emphasis added). In this matter, despite his noble intentions, Mr. Williams lacks standing because he fails to articulate a legally cognizable interest and threatened or actual injury entitling him to remove Sgt. West's remains.

The United States Supreme Court has explained that "[t]o meet the standing requirements . . . '[a] plaintiff must allege *personal injury* fairly traceable to the

2

defendant's allegedly unlawful conduct and likely to be redressed by the requested relief.'" *Raines v. Byrd*, 521 U.S. 811, 818–19 (1997) (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984) (emphasis in original)). Articulating further, the United States Supreme Court has stated that such injury must "affect the plaintiff in a *personal* and *individual* way." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 n.1 (1992) (emphasis added). While the importance of veterans' issues to Mr. Williams is well-known, being deeply involved in such issues is not tantamount to having a "*legally protected* interest" which is "concrete and particularized" and therefore actionable. *Id*. at 560.

To be clear, standing is not merely a technical matter which can be overlooked when the equities of a matter militate against such consideration. Rather, standing goes to the very authority of a court to consider a matter. "Standing is a condition of justiciability that a plaintiff must satisfy in order to invoke the court's subject matter jurisdiction in the first place." *Bank of Am., N.A. v. Greenleaf*, 124 A.3d 1122, 1125 (Me. 2015). If a party lacks standing, the court must dismiss the case because it does not have jurisdiction over the issues presented. "Standing is a jurisdictional matter *antecedent to the right to relief*." *Farmer v. Kinder*, 89 S.W.3d 447, 451 (Mo. 2002) (emphasis added); *see also Greenleaf*, 124 A.3d at 1125 ("A plaintiff's lack of standing renders that plaintiff's complaint nonjusticiable—i.e., incapable of judicial resolution.").

It is well-established that jurisdictional issues can be raised at any time, even *sua sponte* by this Court. "This Court, on its own motion, will take notice of lack of

3

jurisdiction at any time or at any stage of the litigation pending therein." Syl. Pt. 2, *In re Boggs' Estate,* 135 W.Va. 288, 63 S.E.2d 497 (1951); *Greenleaf,* 124 A.3d at 1125 (observing that standing is "an issue cognizable at any stage of a legal proceeding[.]"). Furthermore, "[t]he urgency of addressing problems regarding subject-matter jurisdiction cannot be understated because any decree made by a court lacking jurisdiction is void." *State ex rel. TermNet Merch. Servs., Inc. v. Jordan*, 217 W.Va. 696, 700, 619 S.E.2d 209, 213 (2005); *see also* Franklin D. Cleckley, Robin Jean Davis, and Louis J. Palmer, Jr., *Litigation Handbook on W.Va. Rules of Civ. Pro.*, § 12(b)(1), at 325-26 (4[th] ed. 2012) ("Any judgment or decree rendered without [subject matter] jurisdiction is utterly void.").

Other courts have properly considered the issue of standing in the context of disturbing the resting places of those souls who have passed. In *Grisso v. Nolen*, 554 S.E.2d 91 (Va. 2001), the court addressed the issue of whether Mr. Nolen, who divorced the decedent prior to her death, had a sufficient legal interest in Ms. Nolen's wish regarding her final resting place so as to permit the court to invoke its equity authority to grant his petition. The court rejected the proposition that Mr. Nolen had any cognizable interest or legal standing with respect to matters concerning his former wife. It reasoned that Mr. Nolen "was a legal stranger" to Ms. Nolen "as the result of a divorce decree. As such, and notwithstanding what evidence he might have regarding [Ms.] Nolen's wish as to the final resting place of her body, he had no cognizable interest in the place of her burial and, thus, no standing to seek the disinterment of her body for reburial." *Id.* at 95.

4

The same rationale applies here. Mr. Williams has even less of a connection with Sgt. West; he in fact has none. Further because Mr. Williams never pled a judicially cognizable "injury" or other legitimate personal legal interest, the lower court had no jurisdiction to entertain the petition. Recently, the United States Supreme Court emphasized that "injury in fact" is an essential element to standing. *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) ("To establish injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical.") (quotation marks and citation omitted). Accordingly, this Court should have reversed and remanded the matter to the lower court with directions to dismiss the petition for lack of subject matter jurisdiction.

The foregoing notwithstanding, even if we assume, *arguendo*, that Mr. Williams had standing, the lower court unmistakably abused its discretion in weighing the equities and granting the petition for disinterment considering the strong common law presumption in favor of repose. The majority blindly follows suit and, concluding that the family's lack of blood relationship to Sgt. West diminishes their interest in the matter, finds Mr. Williams' "integrity and capacity to provide a most suitable and deserving resting place" for Sgt. West dispositive. The majority is seemingly unaware of the irony of finding that the VanSickles' lack of "direct familial connection"[1] requires their wishes

---

[1] The VanSickles are relatives by marriage, rather than relatives by blood.

to subvert to those of Mr. Williams—a total stranger, legally and personally, to Sgt. West.

An appeal to equity requires a weighing of the factors or equities that affect the judgment—a function which requires the exercise of judicial discretion. Equity can, at times, do complete justice in the resolution of the controversy before the court, and the court will use the remedy in order to prevent the same controversy in the future. *See Fullerton Lumber Co. v. Torborg,* 80 N.W.2d 461, 465 (Wis. 1957). However, the majority wholly fails to consider the strong common law presumption in favor of repose. Had it applied the appropriate standard, the majority would have held Mr. Williams to a heavy burden when he petitioned to disinter the remains of Mr. West against the wishes of his family. As summed up by one commentator:

> Despite the inconsistencies with which American cases on exhumation and removal of remains are rife, to this extent they all agree in principle: The normal treatment of a corpse, once it is decently buried, is to let it lie. This idea is so deeply woven into our legal and cultural fabric that it is commonplace to hear it spoken of as a "right" of the dead and a charge on the quick. Neither the ecclesiastical, common, nor civil system of jurisprudence permits exhumation for less than what are considered weighty, and sometimes compelling, reasons. Securing "unbroken final repose" has been the object of both civil and criminal legislation.

Peter Zablotsky, *"Curst Be He That Moves My Bones:" the Surprisingly Controlling Role of Religion in Equitable Disinterment Decisions*, 83 N.D. L. Rev. 361, 363 (2007) (footnotes, quotations, and citations omitted).

6

There is no doubt that we deal here with a most sensitive matter. Disputes regarding burial and disinterment touch deep-seated emotions and evoke strongly held personal and religious beliefs. Mr. Williams, a well-known Medal of Honor recipient, believes Mr. West's remains should be moved to the State Veterans Cemetery in Institute, West Virginia, so that he can be honored there for his service, and his grave can be properly maintained. On the other hand, Mr. Roger VanSickle, a great-nephew of Mr. West, and other family members believe that Mr. West should remain, at rest, in the family cemetery that is located within Chief Cornstalk Wildlife Management Area, in Southside, West Virginia. Mr. West's widow, Maggie VanSickle West, buried Mr. West in the family cemetery, and they assert her wishes must be respected. Notably, the family proposed an alternative that would have resolved this matter amicably: leave Mr. West's grave undisturbed and build a memorial in his honor at the Veterans Cemetery.

By rejecting this judicious proposition without explanation, the majority summarily concludes that: "Mr. Williams has demonstrated the integrity and capacity to provide a most suitable and deserving resting place for Mr. West's remains." Clearly, no one questions Mr. Williams' sincerity or integrity. In fact, I suspect the majority disregards the strong common law presumption in favor of repose in large part *because* Mr. Williams is held in such high esteem. However, in matters such as these, the Court must be especially on guard to apply the rule of law in a neutral manner. "The quiet of the grave, the repose of the dead, are not lightly to be disturbed. Good and substantial

reasons must be shown before disinterment is to be sanctioned." *Lipiner v. Plaza Jewish Cty. Chapel*, 41 N.Y.S.3d 384, 387 (N.Y. Sup. Ct. 2016) (citation omitted).

There is hundred-year-old case law recognizing a strong common law presumption in favor of repose. In fact, since antiquity, most societies have held burial grounds in great reverence. *See Memphis State Line R.R. v. Forest Hill Cemetery Co.,* 94 S.W. 69, 73 (Tenn. 1906) (observing that repositories of dead are regarded with veneration); *Mills v. Carolina Cemetery Park Corp.,* 86 S.E.2d 893, 898 (N.C. 1955) (accord). The early common law protected the sanctity of the grave by recognizing the "right" to a decent burial and the "right" to undisturbed repose. *Carney v. Smith*, 437 S.W.2d 246, 247 (Tenn. 1969); *Thompson v. State,* 58 S.W. 213, 213 (Tenn. 1900). Accordingly, unless a good and substantial reason existed, the common law strongly disfavored disturbing a body once it had been suitably buried. In the words of Justice Cardozo, then a member of the New York Court of Appeals, "[t]he dead are to rest where they have been laid unless reason of substance is brought forward for disturbing their repose." *Yome v. Gorman,* 152 N.E. 126, 129 (N.Y. Ct. App. 1926).

The majority ignored fundamental rules of law when it did not properly recognize the substantial rights of the VanSickle family to honor the decision of their ancestor, Mr. West's widow. By reason of their familial relationship with the decedent, their wishes are of paramount importance.

8

First. That the paramount right is in the surviving husband or widow, and, if the parties were living in the normal relations of marriage, it will require a very strong case to justify a court in interfering with the wish of the survivor. Secondly. If there is no surviving husband or wife, the right is in the next of kin in the order of their relation to the decedent, as children of proper age, parents, brothers and sisters, or more distant kin, modified, it may be, by circumstances of special intimacy or association with the decedent. Third[.] How far the desires of the decedent should prevail against those of a surviving husband or wife is an open question, but as against remoter connections, such wishes especially if strongly and recently expressed, should usually prevail. Fourthly. *With regard to a reinterment in a different place, the same rules should apply, but with a presumption against removal growing stronger with the remoteness of connection with the decedent*, and reserving always the right of the court to require reasonable cause to be shown for it.

*Pettigrew v. Pettigrew*, 56 A. 878, 880 (Pa. 1904) (emphasis added); *see also Mallen v. Mallen*, 520 S.W.2d 736, 737-38 (Tenn. Ct. App. 1974) (stating "the wishes of the spouse seem to command first consideration"). The majority places undue emphasis on the fact that the VanSickle family is related to Mr. West by marriage, not blood, because Mr. West had no biological children. This distinction is completely irrelevant. The VanSickle family is *still* Mr. West's family. In contrast, Mr. Williams—although he petitions with laudable purpose—is a legal stranger to the West/VanSickle family.

Even though he prevailed in this case, I encourage Mr. Williams to reconsider his position, respect the wishes of the VanSickle family, and leave Sgt. West's remains where they have been laid to rest. The most excellent way to honor our nation's brave military heroes who sacrificed to preserve our freedoms is to follow the rule of law,

9

without fear or favor.  The majority has failed to do so.  Accordingly, I respectfully dissent.